BOURNS, INC. and Marlan E. Bourns,

v.

The UNITED STATES, Allen-Bradley
Company et al., Intervenors.

No. 383–73.

United States Court of Claims.

July 9, 1976.

Clyde F. Willian, Chicago, Ill., attorney of record, for plaintiffs. Robert L. Harmon, David A. Anderson and Hume, Clement, Brinks, Willian, Olds & Cook, Ltd., Chicago, Ill., of counsel.

Vito J. DiPietro, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Lewis T. Steadman, Chicago, Ill., for the intervenors. Robert W. Berry, Washington, D. C., attorney of record. Quarles & Brady, Milwaukee, Wis., of counsel.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and SKELTON, Judge.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

### PER CURIAM:

This case comes before the court on plaintiffs' request, filed November 4, 1975, for review by the court of the recommended decision, filed August 1, 1975, by former Trial Judge Hal D. Cooper (since resigned to enter private practice of law), pursuant to Rules 54 and 55, on defendant's motion for partial summary judgment and defendant's supplemental motion for summary judgment. Also before the court is defendant's motion, filed December 10, 1975, to strike affidavits of Robert L. Harmon and Robert C. McColloch which comprise the Appendix to plaintiffs' brief to the court. The case has been submitted on the briefs and oral argument of counsel.

The affidavits comprising the Appendix to plaintiffs' brief amount to a supplementation of the record on review by the court which is generally not permitted and for which the rules of the court do not provide. Therefore, defendant's motion to strike the affidavits is granted.

Since the court agrees with the recommended decision of the trial judge, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case. It is therefore concluded that plaintiffs are not entitled to recover and defendant's motions for summary judgment are granted and the petition is dismissed.

### OPINION OF TRIAL JUDGE

COOPER, Trial Judge:

Relying on *Blonder-Tongue, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), defendant, in two separate motions for summary judgment, asks that collateral estoppel be applied to all of the claims of Bourns Patent No. 2,777,926 asserted in this case. With respect to claims 1, 2, 11, 14, 15, 16, and 20, defendant bases its plea of estoppel on the prior adjudication of invalidity of these claims in *Bourns, Inc. v. Dale Electronics, Inc.*, 308 F.Supp. 501 (D.Nebr.1969). Claims 3, 4, 6, 7, 12, 19, 21, and 22 were not litigated in the prior suit, but defendant contends that they present the same issues under 35 U.S.C. § 103 as those decided adversely to plaintiffs in the *Dale* suit and that, therefore, the estoppel should extend to those claims as well.

For the reasons stated hereinafter, it is concluded that collateral estoppel does apply and that it forecloses any relief to plaintiffs in this case.

## I

The Bourns patent[1] relates to a lead-screw actuated potentiometer (LSAP). A potentiometer is a device for varying the resistance in an electrical circuit. The patent discloses the objects of the invention as providing a potentiometer that (1) may be easily and accurately adjusted, (2) may be manufactured in miniature from high-quality materials, (3) is able to withstand acceleration, vibration, and extreme ranges of temperature, (4) is small in size, compact, and accurate, and (5) has novel means for mounting. The disclosed potentiometer consists of a base on which are supported an elongated resistance element, a conductor generally parallel to the resistance element, a screwshaft, and a slider with contacts. The slider is supported on the screw so that, upon rotation of the screw, the slider and its contacts move in linear fashion along the resistance element and the conductor to vary the resistance in the circuit in which the potentiometer is connected. A cap or cover supported on the base encloses the screw and slider and restrains the slider from rotation. The screw extends through one end of the base to present an external head for adjustment purposes. A pair of holes is provided in the base so that the potentiometer may be supported on parallel mounting posts that extend through the holes. A plurality of potentiometers may be assembled on the same pair of posts, each with its external screwhead similarly oriented for ease of adjustment.

The text of the patent indicates that the ease and accuracy of adjustment achieved with the disclosed potentiometer is the result of using a precision-machined rotatable screwshaft which may be adjusted by a screwdriver. The novel mount consists of the holes in the base. The patent specification does not otherwise indicate how the disclosed device achieves the claimed objectives. For example, although the patent states that several of the component parts may be made from a molded plastic material, there is nothing describing what it is in the arrangement or combination of those components that permits miniaturized manufacture of the device from high-quality materials, or how the device is able to withstand extreme ranges of temperature.[2]

## II

With respect to the previously adjudicated claims, plaintiffs apparently concede that they did receive a full and fair opportunity to litigate the validity issues in the *Dale* case and that the trial court did understand the technical subject matter and issues. Their only defense to the collateral estoppel plea, as applied to those claims, is the argument that it should not be applied retroactively. In support of that argument, plaintiffs have submitted the affidavit of a corporate official in which it is stated that, in reliance on the prior rule in *Triplett v. Lowell*, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), the appeal in the *Dale* case was dismissed and suit was filed in another jurisdiction.[3]

That same argument was rejected in *Bourns, Inc. v. Allen-Bradley Co.*, 348 F.Supp. 554 (N.D.Ill.1972), and by the Court of Appeals in affirming the District Court's application of the estoppel to the previously litigated claims, 480 F.2d 123 (7th Cir. 1973), *cert. denied*, 414 U.S. 1094, 94 S.Ct.

1. The Bourns patent application was filed January 12, 1953, and the patent was issued January 15, 1957.

2. The Vaughan deposition, submitted by plaintiffs, indicates that the ability to withstand temperature changes is the result of using a precious metal wire for the wire-wound resistance element. The patent discloses the wire merely as "fine resistance wire."

3. There has been litigation on this patent since early 1957. Up to the filing of this case, a total of seven actions had been instituted on the basis of the '926 patent. An earlier Court of Claims suit was dismissed without prejudice, as was a suit against a private defendant. Two others were terminated by consent judgments and one was settled by a license agreement. Subsequent to *Dale* suit was filed in the Northern District of Illinois, *Bourns, Inc. v. Allen-Bradley Co.*, in which plaintiffs sought to maintain it as a class action. Failing that, plaintiffs filed four additional infringement suits in three other districts, all of which are still pending.

726, 38 L.Ed.2d 551.[4] The persuasive reasons stated in the opinions of those courts provide a full answer to plaintiffs' arguments and they need not be repeated here. Suffice to say, plaintiffs have cited no case in which a collateral estoppel plea has been denied retroactive application. On the other hand, a number of courts have given retroactive effect to the estoppel in the sense that the estoppel was applied on the basis of an invalidity decision rendered prior to the *Blonder-Tongue* decision. See, e. g., *Technograph Printed Circuits, Ltd. v. United States*, 202 Ct.Cl. 867, 484 F.2d 1383 (1973); *Blumcraft of Pittsburgh v. Kawneer Co.*, 482 F.2d 542 (5th Cir. 1973); *University of Illinois Foundation v. Blonder-Tongue Laboratories, Inc.*, 465 F.2d 380 (7th Cir. 1972), aff'g, 334 F.Supp. 47 (N.D.Ill. 1971), cert. denied, 409 U.S. 1061, 93 S.Ct. 559, 34 L.Ed.2d 513 (1972); *Monsanto Co. v. Dawson Chemical Co.*, 443 F.2d 1035 (5th Cir. 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972); *Blumcraft of Pittsburgh v. Architectural Art Mfg., Inc.*, 337 F.Supp. 853 (D.Kan.1972), aff'd, 459 F.2d 482 (10th Cir. 1972). It should be noted that in *Monsanto* and *Blonder-Tongue* the estoppel plea was allowed in cases where the trial court had already held the patent *valid*, but, by retroactive application of the estoppel, an earlier invalidity determination in another court was held to be controlling.

Nor can there be any doubt that prior district court decisions are a sufficient basis for applying the estoppel. *Iron Ore Co. of Canada v. Dow Chemical Co.*, 177 USPQ 34 (D.Utah 1973), aff'd, 500 F.2d 189 (10th Cir. 1973); *Sherman v. Jacobson*, 247 F.Supp. 261 (S.D.N.Y.1965). That was also the situation in *Lucerne Products, Inc. v. Cutler-Hammer, Inc.*, 175 USPQ 485 (N.D.Ohio 1972), in which an appeal from the trial court's invalidity determination was voluntarily dismissed and collateral estoppel was later applied on the basis of the trial court's opinion.

Finally, with respect to plaintiffs' contention that they relied on the *Triplett* rule in dismissing their appeal in the *Dale* case, it is difficult to accept that contention for the same reasons the Seventh Circuit rejected it. The *Triplett* rule would have permitted further litigation irrespective of whether the appeal had been prosecuted so it is difficult to understand how that rule was decisive in the decision to dismiss the appeal. The clear inference to be drawn from plaintiffs' actions is that they abandoned the appeal because they did not believe it would be successful.

■ Where there is no genuine issue of any material fact, and applicable principles of law indicate that collateral estoppel should be applied, summary judgment is appropriate. *Jones v. Zurich General Accident & Liability Ins. Co.*, 121 F.2d 761 (2d Cir. 1941). There being no genuine issue as to any material fact, and it appearing that plaintiffs had a full and fair opportunity to litigate validity in the *Dale* suit, collateral estoppel applies and they should now be estopped to assert claims 1, 2, 11, 14, 15, 16, and 20.

### III

As to the previously unadjudicated claims, defendant contends that the issues relevant to a determination of the nonobviousness of those claims are identical to the issues adjudicated in *Dale* and that collateral estoppel should apply to them as well.

In support of its contention, defendant has submitted a series of claim-comparison charts which compares each of the claims with adjudicated claim 11 and also compares claim 19 with adjudicated claim 20. With respect to the differences revealed by this comparison, defendant has submitted a number of patents to show that those differences "do not lend patentable significance," to the claimed combination and that, therefore, they do not alter the issues bearing on the obviousness determination. For example, a comparison of unadjudicat-

---

4. As discussed, *infra*, the Seventh Circuit reversed the District Court's application of the estoppel to the unadjudicated claims.

ed claims 3 with adjudicated claim 11[5] reveals the same combination of elements except that claim 3 adds to the combination a cap or cover and hollow rivets in the mounting holes, the rivets securing the cap to the base. The use of covers with potentiometers is shown to be known in the art, defendant citing, for example, Patent No. 1,692,962 and Bourns' prior Patent No. 2,515,981. With respect to the hollow rivets, defendant has cited a number of prior art patents which disclose hollow rivets for securing one element to another. See, e. g., Patent No. 2,721,964, in which the rivets define openings to receive mounting posts.

In opposition to the motion, plaintiffs' basic position is that collateral estoppel under *Blonder-Tongue* is only applicable to the specific claims actually litigated in the prior action. In support of that position, plaintiffs cite their own prior case, *Bourns, Inc. v. Allen-Bradley Co., supra,* in which the Seventh Circuit reversed the District Court's application of estoppel to unadjudicated claims. Plaintiffs maintain that any application of collateral estoppel to unadjudicated claims would be contrary to the patent statute which provides that each claim of a patent is to be presumed valid and would, therefore, be a denial of due process.

■ Plaintiffs' position cannot be accepted for the reason that it gives too restrictive an application to the collateral estoppel doctrine. As this court stated in *Carter-Wallace, Inc. v. United States,* 496 F.2d 535, 538, 204 Ct.Cl. 341, 348 (1974), in determining the applicability of the estoppel, the first consideration is "whether the issue of invalidity common to each action is substantially identical." It is the identity of the *issues* litigated and decided, and which were essential to the prior judgment, that determines whether the estoppel should be applied. That, classically, has always been the basis on which collateral estoppel has been applied. *Commissioner v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Hilkovsky v. United States,* 504 F.2d 1112, 205 Ct.Cl. 460 (1974); Restatement, Judgments §§ 68, 70 (1942).

■ There is no reason to employ a different approach in a patent context by looking to the claims litigated instead of to the issues that were decided. Courts have long recognized that the claims of a patent may be repeated and duplicated, varying one from the other only in certain minor details. See, e. g., *Peerless Roll Leaf Co. v. H. Griffin & Sons Co.,* 29 F.2d 646, 648 (2d Cir. 1928); *Aluminum Co. v. Sterling Products Corp.,* 66 F.2d 958, 962 (8th Cir. 1933). *See, also,* A. Deller, Patent Claims § 325 (2d ed. 1971), and cases there cited. The well-entrenched practice of presenting a multiplicity of claims of graduated breadth and different scope serves several legitimate purposes. Basically, that practice represents the patent solicitor's hope that at least some of the claims will avoid prior art of which he and the Patent Office are unaware, as well as his attempt to cover as

---

5. Claim 3 provides:

"A variable resistor comprising: a housing comprising a base member and a cap; a resistance element mounted in said housing; a slider mounted in said housing; screw means engaging said slider and adapted upon turning to cause longitudinal travel of said slider, means restraining said slider against rotation; a contact member on said slider engaging said resistance element; and a pair of spaced hollow rivets, each extending through said base member and said cap and securing said cap to said base member, whereby a plurality of like resistors may be assembled upon parallel posts extending through said hollow rivets."

Claim 11:

"A variable resistor comprising: a base member having a pair of upstanding portions at opposite ends thereof; a resistance element and a conductor mounted side by side on said base member; screw means rotatably mounted between said upstanding end portions; means engaging said screw means to prevent longitudinal movement thereof while permitting rotation thereof; a slider having threaded engagement with said screw means; spring contact members carried by said slider and wiping on said resistance element and conductor; means restraining said slider against rotation, whereby turning of said screw means causes said spring contact members to travel over said resistance element and said conductor, and means for mounting said resistor, including apertures extending transversely thru said upstanding end portions of said base member to receive parallel mounting posts.

many variations, both in the inventive concept and the environment in which that concept is used, as creative competitors may devise. McCrady, Patent Office Practice § 77 (4th ed. 1959); Ellis, Patent Claims § 97 (1949).

In the usual case, the claims may be multiplied either because there are multiple facets to the invention and claims to the separate parts and subparts are necessary to protect the invention, *Wm. B. Scaife & Sons Co. v. Falls City Woolen Mills*, 209 F. 210, 214 (6th Cir. 1913), or because it is desired to define the metes and bounds of the invention in a variety of different ways. In the former situation, the invention may vary substantively from one claim to the other, but, in the latter case, the inventive thought expressed in the claims may well be the same, with only the language used to describe it, or the background elements included in the claimed combination, being varied from claim to claim. The realities of patent practice suggest that, merely because the invention, the patentee's contribution to the art, is presented in varying language or varying combinations of elements does not necessarily mean that the issues bearing on the nonobviousness of that concept or contribution vary from one claim to the next. *See, Adt v. Bay State Optical Co.*, 226 F. 925, 934 (1st Cir. 1915). That each of several differently worded claims may present identical issues is apparent from the rather common practice of selecting representative claims and stipulating that the validity of a group of claims may be determined on the basis of the representative claims. *See, e. g., Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.*, 317 F.Supp. 201 (N.D.Ohio 1970), *aff'd*, 445 F.2d 911 (6th Cir. 1971), *cert. denied*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972).

For the foregoing reasons, the precedent of *Bourns, Inc. v. Allen-Bradley Co., supra*, insofar as it sets out a rule which would automatically limit collateral estoppel only to the claims actually litigated is considered to be unpersuasive and is not followed here. Rather, the correct view is believed to be that of the Sixth Circuit in *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.*, 498 F.2d 1115 (6th Cir. 1974), which held collateral estoppel applicable to unadjudicated claims where it was shown that the adjudicated and unadjudicated claims presented identical issues. In reaching that conclusion, recognition is given to plaintiffs' arguments regarding due process and the further argument that each claim is to be presumed valid and treated as a complete and independent invention. However, by focusing on the issues of fact and law necessary to a resolution of the obviousness issue, *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), a determination can be made whether the unadjudicated claims present any new issues which, to afford due process, would require a trial on the merits, or whether litigation on those claims would simply be a "repetitious lawsuit over matters which have once been decided." *Commissioner v. Sunnen, supra*, 333 U.S. at 599, 68 S.Ct. at 720. Stated otherwise, if a patentee has once been heard on all the factual issues necessary to an obviousness determination, and that determination already has been made adversely to one claim, neither due process nor any provision of the patent statute would appear to require that the patentee be heard once again on those same issues and on the same obviousness determination simply because a different claim is involved. It is believed that a proper application of *Blonder-Tongue* should preclude just such relitigation of the issues.

Plaintiffs also argue that defendant's claim comparisons, aside from the merits, improperly treat the adjudicated claims as prior art, in an effort to show that the differences between the claims are obvious. Plaintiffs assert that each claim of a patent is entitled to a presumption of validity, that each claim is to be treated as a separate and complete invention, that the pertinent standard is as to the differences between the prior art and the claims, and that invalidity of a claim does not transform the subject matter of that claim into prior art.

Plaintiffs' argument, so far as it goes, is clearly correct. A domino approach in which each successively narrower claim is compared with the one before it, not with the prior art, is inappropriate since it improperly gives prior-art effect to the subject matter of an invalid claim. *In re Craig and Street*, Cust. & Pat.App., 411 F.2d 1333, 1335 (1969). A claim may be invalid for obviousness under 35 U.S.C. § 103 but still describe a combination not found in the prior art. Moreover, it is well settled that each claim of a patent is entitled to a presumption of validity and is to be treated as a complete and independent invention. 35 U.S.C. §§ 282, 288. *Leeds & Catlin v. Victor Talking Machine Co.*, 213 U.S. 301, 319, 29 S.Ct. 495, 53 L.Ed. 805 (1909); *Smith Industries International v. Hughes Tool Co.*, 396 F.2d 735, 736 (5th Cir. 1968).

However, there is nothing in any of those long-accepted principles which appears to foreclose, or is inconsistent with, a determination that the issues bearing on validity of two separate claims are substantively the same. To assess the identity of those issues, it is convenient to compare the adjudicated and unadjudicated claims. Obviousness of the unadjudicated claims not being an issue, it is clear that the differences revealed by such comparisons must be evaluated, not in terms of obviousness under a domino approach, but, rather, in terms of the *Graham* issues. Where the differences revealed by a comparison of the claims do not vary the relevant issues bearing on obviousness, collateral estoppel should apply. *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.*, 380 F.Supp. 517 (N.D.Ohio 1973), *aff'd*, 498 F.2d 1115 (6th Cir. 1974).

Turning to the merits of the claim comparison,[6] defendant's presentation tends to establish that the differences between the adjudicated and unadjudicated claims relate only to things known in the art and,

hence, the "differences between the prior art and the claims at issue," *Graham, supra*, 383 U.S. at 17, 86 S.Ct. at 694, are the same as in *Dale*. In other words, that presentation indicates that the additional elements recited in the unadjudicated claims do not distinguish the claimed combination as a whole from the prior art. Indeed, plaintiffs do not contest this, making no argument at all in that respect. The features in the claims here at issue, such as the mounting arrangement and parallel posts (claims 3, 12, 21, and 22), the protruding screwhead for ease of adjustment (claim 21), the close and rapid assembly of the device (claim 22), the use of terminal connectors (claim 19), and the self-locking adjustment (claim 21), were all included in the claims litigated in *Dale*. Specifically, adjudicated claims 1, 2, 11, 14, and 15 cover the mounting holes and posts; claim 20 the protruding screwhead; claims 1, 2, 11, and 14 the close and rapid assembly; and claims 15 and 16 the terminal connectors. The self-locking feature, which consists of the threaded support of the slider on the screw, was present in all of the previous claims. Those features are the principal ones which relate to the objects of the invention stated in the Bourns patent; the remainder, such as size, compactness, and ability to withstand temperature changes, appear to have no support in any of the claims, and plaintiffs do not contend otherwise.

There are essentially two features included in some of the claims not found in the adjudicated claims. One is the use of hollow rivets in the mounting holes to secure the cover to the base (claims 3, 6, and 12) and the other is the cooperation of the cover with the slider to restrain the slider from rotation (claims 4, 6, and 7). As noted previously, defendant has cited prior art showing these features and urges that they are of no importance to the combination as a whole. Most significantly, plaintiffs do not contest this, offering not one word that

---

6. As the proponent of the estoppel plea, defendant has the burden not only of establishing by a preponderance of all the evidence that identical issues are presented by the adjudicated and unadjudicated claims, *Westwood Chem-*

*ical, Inc. v. Molded Fiber Glass Body Co.*, *supra*, but also of showing that, on this motion for summary judgment, there are no genuine issues of material fact relevant to that determination.

suggests that either of those features contributed in any way to any of the stated objects of the patent, or that they are in any way important to the combination set forth in the claims in which they appear. Plaintiffs' only argument is that the invention must be viewed as the overall combination and the presence of these additional elements in the claims "conclusively" establishes there are new issues.

That the subject matter of a claim must be considered as a whole is a position with which there is "no quibble." Graham, supra, 383 U.S. at 32, 86 S.Ct. 684. But the practicalities are to look to the distinguishing features incorporated into the claims and the validity determination necessarily focuses on those features. Id. at 34, 86 S.Ct. 684. Where, as here, the distinguishing features of the adjudicated and unadjudicated claims appear to be the same, and neither the text of the patent nor the plaintiffs here attribute any importance or significance to the additional elements included in the unadjudicated claims, it is difficult to justify a further trial merely because of the presence of those elements in the claims.

The comparison of claims 3 and 11 illustrates this point. Both claims are directed to the same combination of elements, including the mounting holes in the base; claim 3, however, adds hollow rivets in the mounting holes as an additional element in the claim. The Dale court concluded that it was the mounting-hole arrangement which distinguished claim 11 from the prior art and it is clear that this is one of the principal features of the patent. Yet, the Dale court found that to be obvious in the combination claimed. Claim 3 presents the question of whether that same mounting arrangement in the same combination of elements raises a new issue simply because hollow rivets are now included in the combination. Defendant has cited a number of patents disclosing electrical components connected by hollow rivets with mounting posts extending through the rivets. While plaintiffs, on the other hand, would apparently say that the rivets raise a new issue, there is not even an argument directed to the hollow rivets, much less a substantive showing, that this is so. Based on defendant's showing, the conclusion is inescapable that the use of hollow rivets does not distinguish the claim from the prior art and that if there is anything nonobvious in the combination, it must reside in the concept of mounting holes in the base of a potentiometer. Since the Dale court has already considered that concept and declared it to be obvious, further consideration of the obviousness or nonobviousness of the mounting arrangement, albeit in combination with hollow rivets, would afford the patentee, contrary to the philosophy of Blonder-Tongue, a second chance to litigate what he had a full and fair opportunity to do in the first suit.

The comparison of claims 4 and 11 further illustrate how, notwithstanding differences in language and elements, identical issue are presented. Both claims[7] specify the same combination of elements; however, claim 4 is somewhat more specific in that it describes the base member as being of molded plastic with longitudinal grooves and specifies the cap as the means for restraining the slider against rotation. Thompson Patent No. 1,692,962 (a patent also considered in Dale) clearly discloses the well-known feature of a cap restraining the slider of a screw-actuated potentiome-

---

7. Claim 4 provides:

"A variable resistor comprising: a base member of molded plastic material; said base member having a pair of parallel longitudinal grooves therein and a pair of spaced upstanding portions; a resistance element mounted in one of said grooves; a conductor mounted in the other of said grooves; screw means mounted between said spaced portions; means engaging said screw means to prevent longitudinal movement thereof while permitting rotation thereof; a slider having a threaded engagement with said screw means; spring contact members carried by said slider and engaging said resistance element and conductor; and a cap mounted on said base member, enclosing said resistor and restraining said slider against rotation whereby turning of said screw means causes said spring contact members to travel over said resistance element and said conductor."

ter, while Bourns' prior Patent No. 2,515,-981 discloses a base with longitudinal grooves. Once again, plaintiffs offer not one word of argument that any of these features is of any significance or importance, it appearing that it is the leadscrew actuated feature present in both claims that plaintiffs consider to be the important contribution to the art. The *Dale* court expressly considered that feature, concluded that it was known in the art, that it did not distinguish claim 11 from prior art, and that the combination, which included a leadscrew actuator, a base member, and means for restraining the slider, was an obvious one.

Merely because claim 4 describes the base as being of plastic with grooves, and designates the restraining means as the cap, all of which are known in the art, does not appear to raise any new issues with respect to the leadscrew actuator, or the patentability of the combination in which it is used. That is particularly so when neither the patent nor the plaintiffs attribute any significance to the additional limitations included in claim 4. Hence, it appears that any inquiry into the validity of claim 4 would simply be relitigation of the same issues already decided adversely to the patentee and would be a transparent attempt to overturn the prior obviousness determination. That is improper and collateral estoppel is applicable under such circumstances. Cf. *Seminole Nation of Oklahoma v. United States*, 492 F.2d 811, 816, 203 Ct.Cl. 637, 646 (1974).

Another aspect of plaintiffs' argument relates to the secondary considerations recognized as relevant in *Graham*. A substantial portion of their brief is devoted to extolling the virtues of a commercial device identified only as the "Bourns LSAP." A number of affidavits have been presented in which the Bourns LSAP is described as a

"significant and valuable contribution," "a substantial contribution to the art," and an innovation of "extraordinary value." These affidavits, and supporting documentary evidence, tend to establish that the Bourns LSAP satisfied a long felt need for a suitable trimming potentiometer of miniature size that would retain its setting (the so-called self-locking feature) under adverse conditions. Further, this evidence tends to support the conclusion that the Bourns LSAP has been a clear commercial success, that it has been imitated and copied by those throughout the industry, and that it has revolutionized the market for devices of this kind.

After full consideration of this evidence, it is concluded that it does not provide an adequate basis for denying the estoppel plea. There may well be situations where, even if identical claims are involved, secondary considerations not available in the first suit will lead to the determination that an estoppel plea should be denied. *Cf. In re Herr*, 377 F.2d 610, 54 CCPA 1315 (1967). But this is not such a case. In the first place, plaintiffs have inadequately identified the Bourns LSAP so that a determination can be made as to whether that device is the same as that disclosed in the patent and set forth in the claims here in issue. While it may be inferred from the affidavits that it is of the same general type shown in the patent, it is axiomatic that secondary considerations, to be pertinent, must relate to the *claimed contribution* of the patentee, and not to other factors. *Jacobson Brothers, Inc. v. United States*, 512 F.2d 1065, 206 Ct.Cl. 518 (1975); *Palmer v. United States*, 423 F.2d 316, 191 Ct.Cl. 346, (1970), *cert. denied*, 400 U.S. 951, 91 S.Ct. 242, 27 L.Ed.2d 258. Plaintiffs have made almost no showing in that respect.[8] The same problem exists with the

---

8. The Vaughan deposition illustrates the difficulty with plaintiffs' presentation. Vaughan testified at some length regarding a device identified as "Plaintiffs' Exhibit 238." That exhibit was not made of record in the deposition and has not been presented to the court so its

substance cannot be ascertained. Upon re-direct, the following testimony was elicited:

"Q. Just so that we are clear on the subject, Mr. Vaughan, when you were referring to the sales for the Trimpot Division, were you referring to the sales of leadscrew actuated poten-

affidavits plaintiffs have presented. Although laudatory in nature, not a single one of these affidavits describes the device to which the praise is directed any more specifically than "the Bourns LSAP." Most critically, none of the affidavits attempts to relate any specific portion or aspect of the "Bourns LSAP" to any particular desirable result so that a determination could be made as to whether the result is achieved by the combination set out in the·*claims.*

With respect to specific advantages, plaintiffs urge that the attributes of size, resolution, and stability possessed by the Bourns LSAP met a long felt need in the industry. While that argument may be accepted as correct, plaintiffs have pointed to nothing in the claims from which it might be concluded that it was the *claimed combination* that permitted attainment of those desirable goals. Nor is there any suggestion that these results are achieved by the combination in the unlitigated claims but were not achieved by the combination of the litigated claims.

The same is true of the contention that the Bourns LSAP succeeded where others failed. Plaintiffs have submitted a list of 29 prior patents which allegedly sought, unsuccessfully to achieve the results attained by the LSAP; however, not a single one of those patents has been submitted to the court, so the argument, insofar as it is based on these patents, remains nothing more than that. While the affidavits do tend to support plaintiffs' argument, no effort has been made to demonstrate that it was the particular combination claimed that had anything at all to do with Bourns succeeding where others failed.

As to commercial success, the deposition of Mr. Vaughan, plaintiff's former sales manager, indicates that it was attributable to a number of factors which included a capable field manager and an aggressive sales program, as well as the device itself. This is insufficient to establish commercial

success as a relevant consideration in an evaluation of the claims here in issue. *Ellicott Machine Corp. v. United States,* 405 F.2d 1385, 1391, 186 Ct.Cl. 655, 667–68 (1969).

Plaintiffs' showing that the industry copied the Bourns LSAP suffers from the same problem. The comparison, to be relevant, must be with the claims in dispute, not between competitors' devices and plaintiffs' commercial device which may or may not be covered by the patent. *Cf. Hartford Empire Co. v. Obear-Nester Glass Co.,* 39 F.2d 769, 771 (8th Cir. 1930); *General Electric Co. v. Hygrade Sylvania Corp.,* 61 F.Supp. 476, 485 (S.D.N.Y.1944). Plaintiffs' comparison of the dimensions of various commercial devices, for example, simply has no relevance to the issues here when the claims are not at all concerned with dimensions.

The depositions of Vaughan and Harrison are the only substantive showings which link any of the secondary considerations urged by plaintiffs with any of the elements found in the claims. Harrison testified that the threaded screwshaft on which the slider was supported was the "main feature" of Bourns' device and that it was this feature which provided adjustability and resistance to shock and vibration. Vaughan testified that the adjustability and friction of the leadscrew were advantages of the Bourns LSAP. It is noted, however, that the *Dale* court not only considered this feature but did so in light of what it described as the great commercial success of plaintiffs' device. Hence, to the extent this evidence establishes secondary considerations pertinent to an element of the claimed combination, it still does not raise any issue different from that already decided in *Dale.*

The fact is that the considerations of commercial success and long felt need, and the advantages of greater accuracy, resistance to vibration, size, configuration, adjustability, and self-locking were all urged

tiometers as exemplified by Plaintiffs' Exhibit 238, which I showed you?

"A. Yes, I was talking solely about leadscrew actuated potentiometers, *not necessarily*

*that model, but as a general class of product, that is what I was talking about.*" [Emphasis supplied.]

in the *Dale* case but to no avail, in part due to a failure to relate them to the claimed combination. See, *e. g.*, 308 F.Supp. at 505, 506. Having failed there, and having made little effort to do so here, it rather clearly appears that these considerations and advantages were no more attributable to the combination of the unadjudicated claims than they were to the adjudicated claims. Accordingly, it is concluded that plaintiffs' arguments regarding the secondary considerations do not raise triable issues of fact which would defeat a motion for summary judgment.[9]

After reviewing the entirety of plaintiffs' presentation, and eliminating for lack of demonstrated relevance the arguments regarding the advantages and secondary considerations, plaintiffs' only basis for opposing the estoppel is the argument that the claims present a combination of elements different from the combination contained in the adjudicated claims. Pertinent to that argument, unsupported as it is by a factual showing, is the statement in *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), where it was said that collateral estoppel "is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." Here, plaintiffs are technically correct that the claims are each directed to different combinations, but when analyzed realistically, the substance of the adjudicated and unadjudicated claims must be viewed as the same and the issues relevant to their validity are the same. Accordingly, plaintiffs' argument, standing alone in the face of defendant's showing, is

simply an inadequate basis on which to withhold application of the estoppel.

## IV

The Supreme Court has observed that, in the end, application of the estoppel "will necessarily rest on the trial courts' sense of justice and equity." *Blonder-Tongue, supra*, 402 U.S. at 334, 91 S.Ct. at 1445. In the circumstances of this case, I am satisfied that it is just and equitable to allow the plea of estoppel here.

The *Dale* suit was in a forum and against a defendant of plaintiffs' own choosing. The claims at issue in that case squarely presented the features of Bourns' potentiometer bearing on the stated objects of the invention as set out in the patent. In particular, the leadscrew actuated feature, in combination with the base, cover, resistor, slider, contacts, and terminal leads, was present in almost every claim litigated and the mounting arrangement was present in many of those claims. In support of the validity of the claims in *Dale*, plaintiffs urged, unsuccessfully, virtually all of the secondary considerations, as well as, the advantages, argued here,[10] so not only was the substance of the patentee's contribution considered on its merits, it was evaluated in light of the relevant secondary considerations.

None of the other traditional factors that normally obviate the estoppel, see, *Hilkovsky v. United States, supra*, 504 F.2d 1113–1114, 204 Ct.Cl. 464–66, are present in this case. Plaintiffs concede they had a full and fair opportunity, procedurally, substantive-

---

**9.** It is, of course, settled that a party contesting a motion for summary judgment must come forward with something more than arguments to show that there is a factual issue to be resolved. *Hartwig v. United States*, 485 F.2d 615, 620–21, 202 Ct.Cl. 801, 810–11 (1973). A party cannot hold back its evidence for trial. *Engl v. Aetna Life Insurance Co.*, 139 F.2d 469, 473 (2d Cir. 1943).

**10.** Plaintiffs do contend that much of the evidence in support of these considerations was newly discovered in the litigation subsequent to *Dale*. That contention was rejected by both the District Court and the Seventh Circuit in

*Bourns, Inc. v. Allen-Bradley Co.*, 348 F.Supp. 554, 557–58 (N.D.Ill.1972), *aff'd*, 480 F.2d 123 (7th Cir. 1973), and it has a hollow ring here. The assertion is unsupported by affidavit or other proof. *Dale* was tried in 1969; plaintiffs' presentation here indicates that their device was on the market by 1953, that competitors started copying as early as 1955, and that litigation has been in progress since 1957. It simply cannot be accepted that plaintiffs, prior to the *Dale* trial, did not know, for example, that their device was being copied, or that commercial success was being experienced, or that there was a long felt need in the industry.

ly, and evidentially, to litigate validity in the *Dale* case and they offer nothing to suggest any lack of incentive to press that litigation. As the Seventh Circuit observed:

> The *Dale* litigation was pending for seven years in a jurisdiction with no backlog; the trial itself lasted six days and produced a transcript of 610 pages; and the potential recovery was over $1,000,000. Thus, appellants had ample incentive to litigate the case to the end. [*Bourns, Inc. v. Allen-Bradley Co., supra*, 480 F.2d at 126.]

Finally, plaintiffs' presentation indicates that some 18 competitors have leadscrew actuated potentiometers which, in plaintiffs' words, are "slavish imitations" of the Bourns device. One of those is the potentiometer marketed by Dale Electronics and which formed the basis of the *Dale* litigation. Having had an opportunity to litigate the culpability of Dale for its alleged copying and infringement, and having been unsuccessful, neither justice nor equity would seem to require that plaintiffs be afforded a further opportunity to continue the battle with the other 17 competitors through the mechanism of a suit against their customer, the United States. Rather, justice and equity would seem to suggest that, one of the 18 manufacturers having been judicially declared to be free to compete without liability to plaintiffs, the time and expense of a full-blown infringement trial should not be required before the other 17 makers of essentially the same thing should be permitted to occupy a similar competitive position. Of course, no broad rule covering such situations can be formulated and there may be circumstances where further litigation would be appropriate; nevertheless, to justify such litigation, in light of the goals and objectives of *Blonder-Tongue*, it should require something more substantial than a technicality that different claims are being asserted.

It is concluded that, despite verbal differences in the claims, issues identical to those in *Dale* are presented here and that, having had their one day in court on those issues, plaintiffs should now be collaterally estopped to relitigate those issues against defendant.

Defendant's motions for summary judgment are granted and the petition is dismissed.

## CONCLUSION

Upon the foregoing opinion, which is made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover and the petition is dismissed.