L. J. GUNSTON

v.

The UNITED STATES.

No. 102–77.

United States Court of Claims.

July 18, 1979.

---

318

Monroe E. Freeman, Jr., Washington, D. C., for plaintiff; Paralee White and Vom Baur, Coburn, Simmons & Turtle, Washington, D. C., of counsel.

Jean Schepers, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, for defendant; P. J. Winzer, and John Erck, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and NICHOLS and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EDWARD S. SMITH, Judge:

This civilian pay case comes before the court on cross-motions for summary judgment. Plaintiff was formerly employed by

the Social Security Administration (SSA) of the Department of Health, Education, and Welfare (agency), San Francisco, California, as a benefit examiner trainee. He began employment with the SSA on November 30, 1969, and was separated twice from employment; on the first occasion "for medical unsuitability" on June 12, 1970, at which time he was a GS–5. An action for reinstatement and back pay brought in the United States District Court for the Northern District of California terminated in plaintiff's favor. The district court referred the case to a magistrate for computation of the appropriate amount of back pay,[1] and the court adopted the magistrate's recommendation that plaintiff be awarded back pay, "including the promotion factor" to GS–8, in the amount of $16,259.77, with interest.[2]

Plaintiff was returned to duty by the agency on May 8, 1972 (some months before the amount of back pay was finally determined), at GS–5, the level he held at the time of his separation. Effective July 20, 1973, the agency again removed plaintiff, this time for unauthorized absences, insubordination, and inadequate work performance. The Civil Service Commission Appeals Review Board affirmed this removal on October 5, 1974, and suit here followed.

Plaintiff requests this court (1) to enforce the district court's judgment as if that court had ordered plaintiff's reinstatement at GS–8 (the demotion claim), and (2) to overturn the second removal as procedurally defective (the wrongful removal claim).[3] The parties have filed motions for summary judgment, relying on the administrative record, and we have heard oral argument. After the case was submitted, plaintiff moved the court to suspend proceedings to permit plaintiff to seek a declaratory judgment in the United States District Court for the Northern District of California to interpret the orders and judgment of that court in No. C–71–373. Since we find the district court's judgment unambiguous, we deny the motion to suspend. Finding no genuine issue of material fact, we hold that defendant is entitled to judgment on both claims as a matter of law. Accordingly, we grant defendant's motion for summary judgment, deny plaintiff's cross-motion for summary judgment, and dismiss the petition.

### The Demotion Claim

■■■ Since the resolution of this part of plaintiff's action depends only upon interpreting the language of the district court,[4] we set out the pertinent parts of the magistrate's report (which was adopted by the district court[5]):

Plaintiff contends that additional back pay is deserved by reason of two promotions that he would have received during the relevant period. Appendix D of the Government's computation states that two promotions would have been granted

---

1. *Gunston v. Civil Serv. Comm'n*, No. 71–373 (N.D.Cal. Dec. 23, 1971) (unpublished mem. dec.).

2. *Gunston v. Civil Serv. Comm'n*, Civ. No. C–71–373–WTS (N.D.Cal. Nov. 2, 1972) (amending previous order adopting magistrate's findings and recommendations).

3. Plaintiff appears to have abandoned any substantive attack on the second removal and focused instead on a number of alleged procedural violations. We shall therefore consider the wrongful removal claim only from that perspective.

4. Defendant makes the additional arguments that (1) plaintiff failed to exhaust administrative remedies because he did not appeal to the CSC the agency's failure to reinstate him as a GS–8, and (2) the district court *could not have*

promoted plaintiff to GS–8, citing, *inter alia, United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Defendant has not pressed the first point. As to the second, plaintiff rightly points out that defendant may not relitigate the district court findings by attacking them here collaterally. *See, e. g., Bourns, Inc. v. United States*, 537 F.2d 486, 490, 210 Ct.Cl. 642, 649 (1976), even if the district court were in error. These same considerations apply to defendant's contention that the district court lacked subject matter jurisdiction under 28 U.S.C. § 1346 (1976) to award plaintiff any amount over $10,000. This is not the proper forum to raise these questions.

5. *Gunston v. Civil Serv. Comm'n*, No. C–71–373 WTS (N.D.Cal. July 20, 1972).

to plaintiff had he not been suspended, and two within-grade increases. Since he did not complete his training and *is not now able to perform the duties of a Benefit Examiner GS–8* (he was a GS–5 at the time of suspension) he was restored to his old position at GS–5 and the Government argues he should * * * receive * * pay * * * based on within-grade increases without the promotions. Why the Government includes within-grade raises but not promotions is not clear. In any event, I would adopt plaintiff's computation and allow the promotions in the figure. Naturally, plaintiff could not be promoted if he were not there. In deleting promotions that he would have received had he not been suspended and *because, of necessity, in restoration to duty he is in the same grade as when suspended, does not mean he should be deprived of promotion salary when computing back pay after unlawful suspension.* [Emphasis added.]

We have no trouble in deciding that the district court, while ordering back pay in an amount including what it termed "the promotion factor," clearly contemplated that plaintiff would properly be restored to his former position and grade, and would be paid at that grade after his reinstatement. Accordingly, we find that plaintiff is not entitled to a difference between the GS–5 and GS–8 rates after his return to duty on May 8, 1972.

### The Wrongful Removal Claim

After plaintiff's restoration to duty on May 8, 1972, there developed within the agency concern at the frequency of plaintiff's absences for claimed sick leave and the effect of these absences on plaintiff's training and work performance. On June 27, his immediate supervisor notified plaintiff that a physician's certificate would be required for certain absences in June, as well as for all future sick leave requests. Plaintiff failed to provide the medical certificates. He also took annual leave without securing agency approval. On September 6, plaintiff was directed to undergo a psychiatric fitness-for-duty examination and was instructed to name a representative, designate a physician to receive reports, and choose one of four named psychiatrists. The agency twice directed plaintiff to report for the examination. Plaintiff requested a suspension until his back pay judgment was paid. When plaintiff failed to name a representative, the agency selected a union representative for him.[6] Plaintiff did not undergo the scheduled examination.

By November 20, plaintiff's work performance was substantially deficient. He had not completed a single case, and he disrupted training and class sessions. The SSA, on November 20, 1972, gave plaintiff notice of proposed removal for unauthorized absences, insubordination, and inadequate work performance. The notice also suggested plaintiff consult Arthur Greenberg, an agency employment relations specialist, if he had any questions about the removal procedure. Plaintiff on December 5, 1972, requested a pretermination hearing. Defendant extended to January 15, 1973, the time for plaintiff to submit responses to the charges, but refused to extend the time until the district court judgment was paid. Plaintiff never submitted any response, oral or written. Effective January 23, 1973, plaintiff was placed on administrative leave in a non-duty status, with pay, until he was removed on July 20, 1973. The district court judgment was paid sometime before the end of January 1973. After numerous delays, a hearing was held on June 20 and again on July 2, 1973, but was terminated when plaintiff failed to attend either session, and the agency regional representative removed plaintiff, effective July 20, 1973, based on the evidence then of record. Plaintiff then appealed to the CSC Board of Appeals and Review (BAR), now the Appeals Review Board, which affirmed the CSC Regional Office decision on October 5, 1974. The CSC Appeals Review Board declined reconsideration on January 5, 1977.

6. Pursuant to 5 C.F.R. § 831.1202 (1973).

Plaintiff alleges the initial agency removal suffers from a number of procedural violations: [7]

■ (1) Plaintiff claims that the agency's refusal to postpone both the psychiatric examination rescheduled for November 1, 1972, and the date for submitting responses to the charges (as extended to January 15, 1973), denied him effective representation to which he was entitled by regulation,[8] because, until the judgment ordered by the district court was paid, plaintiff was unable to retain legal counsel. We view this charge as spurious. Not only was plaintiff appointed a representative for the psychiatric examination by the agency when he failed to name his own, but, as defendant points out, plaintiff continued to receive a salary and was assured an additional payment in the thousands of dollars. Plaintiff has offered no proof that any lawyer refused to assist him simply because he did not offer a lump sum advance payment of attorney's fees.

■ (2) Plaintiff charges that the agency held out Arthur Greenberg (Chief, Employee Relations Section), as a confidential employment counselor, while it simultaneously consulted him regarding plaintiff's removal, and that this "conflict of interest" denied him basic, fair consideration at the agency level. Greenberg met with plaintiff several times in an effort to insure that plaintiff understood how best to proceed in exercising his rights in the removal proceedings. This was consonant with the duties of his position description. However, there is no indication in the record, aside from plaintiff's bare allegation, that Greenberg ever assumed the position of plaintiff's confidential representative or that the agency held him out as such. In fact, the agency prohibits one assigned to its personnel office from acting as an employee's representative in an adverse action.[9] Further, we perceive no prejudice to plaintiff even if Greenberg did advise both plaintiff and the agency as to the proper procedural conduct of the proposed removal.

(3) Before the hearing was scheduled, plaintiff unsuccessfully requested the agency and the designated hearing examiner to provide details of the examiner's decisions in particular cases over a 20-year period,[10] purportedly as a basis for the employee's right to challenge an examiner for cause. The Government, argues plaintiff, obviously has more leverage over an examiner retained on a contract basis than over a permanent examiner, who could not be fired for decisions unfavorable to agency management. Plaintiff does not perceive the request as particularly burdensome, because the examiner or the agency could have excised irrelevant matter or provided a synopsis of the relevant portions. Furthermore, plaintiff argues, the agency has a duty to make this information available, and a failure to preserve and make available the record of the proposed examiner's prior decisions amounts to a failure to "provide a method for selecting an examiner who * * is fair, impartial, and objective." [11]

■ We must disagree. Even if we could agree with plaintiff's interpretation of the regulation, the sheer volume of material requested by plaintiff is unreasonable. Beyond that, the assumption that a *contract* examiner is more likely than a permanent examiner on the average to render a decision favorable to the agency—even if true—proves very little about his impartiality and objectivity in the particular case. Common experience tells us the inference of bias is much too attenuated. Plaintiff may as well argue that federal judges are

---

7. In view of our disposition of this portion of plaintiff's claim, we need not address the issue of whether and to what extent plaintiff's receipt of certain disability benefits after his removal bars his claim for back pay and reinstatement.

8. See note 6, *supra.*

9. HEW Instruction 752–1–1.

10. Plaintiff's request for background information was compiled with, but the details of previous decisions were not available through the agency, and the examiner refused the request.

11. 5 C.F.R. § 771.209(b) (1973).

more likely to render decisions favorable to the Government in tax cases simply because their salaries are paid with tax dollars. In any case, if plaintiff were truly concerned about the hearing examiner's bias, he would have questioned the examiner prior to the commencement of the hearing. In fact, neither plaintiff nor his representative was present at either session.

■ (4) Plaintiff charges the agency violated applicable regulations when it proceeded with the hearing in the face of plaintiff's request for advisory arbitration. Section 771.224 of 5 C.F.R. (1973) states in pertinent part:

(b) An employee may use advisory arbitration only if:

\* \* \* \* \* \*

(3) The labor organization concurs in the use of advisory arbitration and agrees to pay one-half the cost of arbitration.

\* \* \* \* \* \*

(d) When advisory arbitration is provided for in a one-level appeals system [which was the case here] \* \* \*, (1) advisory arbitration serves as an alternate to the examiner; (2) the employee cannot use both advisory arbitration and the examiner, but must choose one or the other; and (3) if the employee uses advisory arbitration, he is entitled to a hearing before the arbitrator.

The labor organization in question never submitted a request to the agency for the arbitration election, and plaintiff did not advise the agency of his request until early June. Inasmuch as the hearing was scheduled for June 20, 1973, we feel the request was nothing more than a last minute attempt at delay. Plaintiff had requested a pretermination hearing before an examiner as early as December 5, 1972; while perhaps not technically an election, this request and his actions thereafter were not consistent with a choice of advisory arbitration, and his request came too late.[12]

(5) Plaintiff asserts that the hearing examiner's failure to make any findings or recommendations in his report with respect to the substantive charges and the agency's evidence on which the charges were based denies him the essential right to have the charges and evidence evaluated by a dispassionate third party. That plaintiff was absent from the hearing, he asserts, makes no difference. Defendant justifies the examiner's actions through 5 C.F.R. § 771.215 (1973) (and HEW Instruction 771–1–20.D.4, making the regulation applicable to agency hearings), which states in part:

(a) The agency shall terminate an employee's appeal [or hearing]:

\* \* \* \* \* \*

(3) For failure to prosecute if the employee does not furnish required information and duly proceed with the advancement of his appeal [or hearing]. However, instead of terminating for failure to prosecute, the agency may adjudicate the appeal [or hearing] if sufficient information for that purpose is available. \* \*

Plaintiff says this justification is without merit because (a) plaintiff did not refuse to furnish required information; (b) the agency did not in fact terminate for this reason because it did not so inform plaintiff explicitly, as required by 5 C.F.R. § 771.215(b); and (c) the agency proceeded to adjudicate on the merits, since the deciding official issued a decision without the benefit of a hearing examiner's recommendations even after plaintiff had requested a hearing.

■ The problem with plaintiff's argument is the very fact that the termination decision was *not* based on the hearing examiner's report. Plaintiff cannot seriously contend that he would have been better served by a hearing examiner's report based only on defendant's evidence than simply on the agency's decision. In neither case would his response to the charges and rebutting evidence be evaluated, *because he never in fact responded.* To accept plain-

12. This is so whichever date one chooses to believe plaintiff advised the agency of his pending request for arbitration.

tiff's argument would be to immunize every federal employee from removal by the simple expedient of demanding a hearing, failing to respond to the charges, and then not showing up.

■ (6) Plaintiff charges that his statement in a letter of June 28, 1973, to the hearing examiner, that a substantial issue of discrimination should be decided, required the examiner to suspend the hearing and refer the allegation for investigation, and that the failure to suspend was a denial of substantial rights which entitles him to reinstatement and back pay. Aside from the fact that plaintiff failed utterly to specify the type of discrimination alleged, the very regulation on which he relies requires suspension only when "an allegation of discrimination is presented for the first time in a hearing under this subpart," and "the employee shows good reason for not having presented the allegation when the appeal was filed."[13] Plaintiff failed to make the initial good cause showing which the regulation requires, and his last minute attempt to stay the proceedings came too late.

■ (7) Plaintiff alleges he was prejudiced by an ex *parte* communication between the agency and the CSC Regional Office appeals examiner who ultimately decided his appeal. The subject communication, evidenced by a memorandum of telephone call of June 15, 1973, occurred prior to the agency's decision to terminate plaintiff and thus prior to plaintiff's appeal to the CSC. Plaintiff objects particularly to the memorandum's statement that plaintiff was placed on administrative leave because his "presence on the premises, as well as his demands upon the supervisory and technician time and the disturbances he creates involving other employees and their work performance," made his absence more economical for the Government. This communication, he claims, rises to the same prejudicial level as that in *Ryder v. United States*, 585 F.2d 482, 218 Ct.Cl. —— (1978), and similarly serves to invalidate his removal. Plaintiff ignores a crucial factual distinction between his case and *Ryder:* here, the communication was not *from* an adversary *to* the initial decisionmaker, but rather from the initial decisionmaker to the second-level decisionmaker. Whatever, if any, derogatory information was communicated to the appeals examiner—and we must strain to interpret it as unduly prejudicial—was *de minimis* in the face of the mass of evidence adduced to support the charges which were eventually sustained by the CSC Appeals Review Board.[14] We simply cannot agree that the fact the agency requested information from the appeals examiner on certain procedural points could so taint his judgment that his later review of

---

13. 5 C.F.R. § 771.216(d) (1973).

14. The following excerpts from the CSC Regional Office decision will serve as examples:
"* * * We further find that the evidence supports .a conclusion that [plaintiff] was aware and understood the reasons for the directive to undergo a fitness-for-duty examination, and understood that his failure to comply could result in disciplinary action. * * *

\* \* \* \* \* \*

"The record reflects that [plaintiff] was cautioned repeatedly concerning his use of leave during training time and the adverse effect of his absences on his training progress. He was also informed that his frequent departures and return during classroom time and asking questions irrelevant to the lesson plan were disruptive and interfered with the normal progress of the class. The evidence reflects that [plaintiff] persisted in behavior that impeded his training and the training of others, frequently demanded changes in the training program on the basis of his personal preferences, evaded training, and either would not or could not complete simple case work assignments. * * *

\* \* \* \* \* \*

"The record is replete with similar documented examples cautioning [plaintiff] about his absences, both approved and disapproved, and the adverse effects of such absences on his training and work performance. * * *

"* * * [Plaintiff], by his own actions, effectively nullified the agency's attempts to train him so that he could perform his job adequately. The evidence also reflects that [plaintiff's] training period was extended far beyond the 'several weeks of formal instruction' specified in his position description and that reasonable efforts were made to supplement his classroom training by the assignment of mentors for on-the-job training with simple case assignments. These efforts by the agency to assist [plaintiff] were rendered ineffective by his counter productive tactics. * * *"

the case was inescapably or even arguably biased.

■ All plaintiff's arguments, while perhaps technically supportable, ignore the obvious. The record is replete with instances of plaintiff requesting and receiving particular procedures and then changing his mind. Also, plaintiff, while initially requesting a pretermination hearing, as was his right, did all in his power to frustrate the hearing. He failed to respond to the charges; he made unduly burdensome "discovery" requests, and threw numerous roadblocks in the path of the prompt disposition of the hearing. He urges, even now, that the hearing should have been postponed; he failed to appear at either of the scheduled hearing dates. The agency made diligent efforts to accommodate plaintiff's requests for stays and continuances over the course of several months. Plaintiff does not now attack the substance of the sustained charges.[15] We refuse to require that the agency begin the process anew because of arguably technical minor violations, none of which rises to the level of prejudicial error.

Accordingly, upon consideration of the briefs and record, and after hearing oral argument, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, plaintiff's motion for stay of proceedings is denied, and the petition is dismissed.