NIES, Circuit Judge,
dissenting.
I
I dissent. In summary, my reasons are:
1. Colonel Morton has no unsatisfied claim for statutory pay. Morton’s claim has been discharged by payment to the Alabama court even if the underlying judgment were void or had been set aside. An employee has no claim against his employer for failing to litigate the validity of a preexisting judgment on which garnishment is based.
2. The United States has specifically reserved its immunity from suit (whether viewed as a statutory claim, a violation of fiduciary duty, a suit for wrongful garnishment, or an action based on abuse of administrative discretion). The majority, in effect, interprets the statutory reservation of sovereign immunity to impose liability.
3. Absence of binding judgment on affected parties. The judgment of the Claims Court must be vacated because of the ab *691 sence of indispensable parties, namely, the dependents of Colonel Morton who benefited by the garnishment.
4. Principles of comity and federalism require that Colonel Morton seek relief in the Alabama courts. The majority’s holding that the underlying Alabama judgment against Colonel Morton is void violates these principles.
5. The exercise of jurisdiction by the Alabama Court over Colonel Morton in 1974 does not offend concepts of due process. Colonel Morton was purposely availing himself of the privileges of the state of Alabama at that time in the conduct of his personal affairs.
I base these conclusions on the following key factors. First, the facial validity of the writs served on the Government, as well as the judgment for alimony and child support which accompanied the garnishment process, is unquestioned and unquestionable. Second, Morton does not dispute that he received actual notice of the divorce decree, the writs, and the Government’s answers. Third, the judgment for alimony and child support, while based on a default, was entered only after a hearing before the Alabama court and open court testimony by Mrs. Morton. The court was aware that Colonel Morton was a nonresident of Alabama and, nevertheless, found it had jurisdiction over him to enter the monetary judgment.
Finally, but most importantly, the legislative history of the Social Services Amendments of 1974, Pub.L. No. 93-647, 88 Stat. 2337 (1975) (S.Rep. No. 93-1356, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 8133), shows that the purpose in allowing garnishment, which came into being by that statute, was to aid the states and federal Government in reducing public aid to dependent children. Garnishment of federal wages is allowed only for support payments of dependents. The majority entirely frustrates this purpose.
II

Morton’s pay claim has been discharged

The fundamental error which pervades the majority opinion is its unquestioning acceptance of the premise that a private employer would remain liable to an employee for wages under the circumstances here. Thus, the majority finds it necessary to discuss only the issue of sovereign immunity. Since a private employer would not be liable under similar circumstances, consideration of sovereign immunity would be unnecessary except that, if there is immunity, a fundamental question of the court’s jurisdiction is raised.
It has been the position ' of Morton throughout these proceedings that, regardless of facial validity, where garnishment proceedings are based on a void judgment, payment by the garnishee is, ipso facto, illegal, so that the garnishee remains liable on his debt to the judgment-debtor. This legal premise is erroneous, but it is the basis for liability adopted by the trial court and purportedly by the majority.[1] As stated in the trial judge’s opinion (Slip Op. at 21-22):
The writs of garnishment involved in the present case were issued as incidents to the decree of the Alabama court. As the decree of the Alabama court was void for lack of jurisdiction insofar as it ordered Colonel Morton to make alimony and child support payments to Patricia Kay Morton, the writs of garnishment must necessarily fall along with the portion of the decree on which they were based. Laborde v. Ubarri, 214 U.S. 173, 174 [29 S.Ct. 552, 53 L.Ed. 955] (1909).
Hi Hs %¡ s}s *
For the reasons previously outlined, it is concluded that the Air Force Finance Office acted arbitrarily and illegally when it ignored the plaintiff’s protest that the Alabama court did not have jurisdiction to enter a money judgment against him for alimony and child support, made deductions from the plaintiff’s pay, and paid the money over to the *692 Circuit Court for the Tenth Judicial Circuit of Alabama pursuant to writs of garnishment that were void because they were ancillary to a court decree which was void for lack of jurisdiction insofar as it ordered Colonel Morton to make alimony and child support payments to Patricia Kay Morton.
Morton’s argument begins with an analysis of divorce law[2] leading to the conclusion that a court must have personal jurisdiction over the defendant in a divorce action to enter a monetary judgment. No one takes issue with this premise. Then, he correctly states that garnishment proceedings are ancillary to the principal action. Thus, if the original judgment is held to be void, the ancillary writ of garnishment also falls. Laborde v. Ubarri, 214 U.S. 173, 29 S.Ct. 552, 53 L.Ed. 955 (1909); Wilkinson v. Cohen, 257 Ala. 16, 57 So.2d 108 (1952). This precedent does not establish that a garnishee remains liable because execution was obtained against him on a void judgment. No such precedent exists. Rather, the cited precedent establishes that if the underlying judgment is set aside, the judgment-creditor must return the property he obtained by garnishment. Thus, the cases deal with the rights of Colonel Morton against Mrs. Morton, not against the United States.
Similarly, no precedent relevant to this case can be derived from prejudgment garnishment cases on which Morton and the majority rely. (See n. 4, infra.) The United States was in no way responsible for the underlying judgment against Colonel Morton. Indeed, the general principles to be applied here are more appropriately found in the Law of Judgments. In any event, since garnishment is a creation of state statutory law, in determining whether the United States as a garnisheed employer has fulfilled its obligations, we first must look to state law for guidance and in particular to the law of Alabama.
In establishing garnishment procedures, the various states can impose whatever duties their citizens find appropriate on a garnishee, and by waiver of immunity the United States has made itself subject to these state laws like an ordinary employer. The obligations imposed by a state on a garnishee must, of course, take into account the due process rights of a garnishee which are as important as the due process rights of a judgment-debtor. The majority, without any analysis of the Alabama statute, finds a duty on an employer served with garnishment to carry the burden of litigation for his employee on penalty of double liability. Such an obligation would clearly violate the due process rights of a garnishee. The employer/garnishee has no interest in the litigation, being merely a stakeholder, and cannot be made to shoulder the burden and expense of litigation for someone else. Indeed, I believe the concept of imposing a duty to litigate the underlying judgment would be unthinkable, except for the fact that the employer here is the Government. However, the relationship between the Government and Colonel Morton in garnishment proceedings is in no way unique. It should at least give the majority pause that out of the thousands and thousands of garnishment proceedings against employers each month, not one case can be cited where an employer was held liable to his employee because the underlying judgment was void or because the employer failed to litigate the issue of its validity for his employee. Anyone who has ever dealt with garnishment involving private employees would be aware that employees routinely tell their employers, when informed of *693 garnishment, that the judgment was satisfied, that they were not served, or that they will sue if they do not get their wages, just as Colonel Morton did here. Such statements do not affect a private employer’s duty or liability. Employers must pay according to the court’s direction, assuming the employer is subject to the court’s jurisdiction. It is hornbook law in garnishment proceedings throughout the states that the employee has the obligation to challenge the garnishor before the court which allowed garnishment. Calhoun v. United States, 557 F.2d 401 (4th Cir.) (per curiam), cert. denied, 434 U.S. 966, 98 S.Ct. 509, 54 L.Ed.2d 453 (1977).
Under Alabama law, nothing could be clearer than that Morton would have no claim against a private employer merely because the underlying judgment is void. Upon proper service of a writ on an employer, the employer has no option but to answer, stating the amount of indebtedness to its employee. The majority suggests the Government should have “refused to honor” the writ. No private employer has that right, and under 42 U.S.C. § 659(a) (1976 & Supp. IV 1980) the Government is treated “in like manner and to the same extent as if the United States ... were a private person.” The United States could no more “refuse to honor” the writ summoning the Government to the Alabama court than it could “refuse to honor” the summons by the Court of Claims. The United States had to answer, and in its answer had to state whether or not it owed money to Colonel Morton. Ala.Code §§ 6-6-393 and 6-6-450 (1975).[3] Once an employer’s answer admits the amount of garnishable indebtedness, or if the employer fails to answer, a judgment must be entered against the employer in favor of the garnishor (i.e., Mrs. Morton). Id. §§ 6-6-454 and 6-6-457. Where the garnishment is on an existing judgment, an employee may post bond to stop the garnishment. Id. § 6-6-430(a). Where no bond is given and the garnisheed employer pays to the court, § 6-6-453(a) provides: “Such payment has the effect to discharge the garnishee from liability for the amount so paid .... ”
As further protection of the garnishee from the debtor, (i.e., the United States from Colonel Morton), the statute provides in § 6-6-461:
The judgment condemning the debt, money or effects to the satisfaction of the plaintiff’s [Mrs. Morton’s] demand is conclusive as between the garnishee [the United States] and the defendant [Colonel Morton] to the extent of such judgment, unless the defendant prosecutes to effect an appeal from such judgment, which he may do in his own name; and, if such judgment is stayed by bond and the garnishee is notified of the fact, he is not permitted to discharge such judgment pending appeal.
No Alabama case law construes the protection given the garnishee from a subsequent action by the judgment-debtor as in any way conditional on the actual validity of the underlying judgment. As early as 1878, the Supreme Court of Alabama held in Montgomery Gas Light Co. v. Merrick & Sons, 61 Ala. 534 (1878):
Since the garnishee stands in relation of indifference between the plaintiff and the defendant, the court will protect him against the jeopardy of a double satisfaction, if an action is commenced against him by the defendant.
In construing a Georgia statute paralleling that of Alabama, Judge O’Kelley, in West v. West, 402 F.Supp. 1189 (N.D.Ga. 1975), provided the following perceptive analysis of the role and liability of an employer (in that case also the federal Government) who becomes involved in garnishment proceedings:
Under Georgia law, when a garnishee answers the summons of garnishment, *694 the statements in the answer are accepted as true, and the garnishee is discharged from all further liability unless either the claimant or the defendant files a traverse contesting the answer. Ga. Code Ann. § 46-303 (Rev.1974); Peaslee-Gaulbert Corp. v. Okarma, 97 Ga.App. 809, 104 S.E.2d 548 (1958).
* * * * * *
If the fact and amount of the government’s debt to the defendant is not challenged, the garnishee has no further liability and is no longer interested in the litigation.
Id. at 1191-92. See also Garrett v. Hoffman, 441 F.Supp. 1151, 1157 (E.D.Pa.1977) (“[A] Florida writ, once served on the Federal defendants, rendered them liable to [garnishor/wife] for plaintiff’s accrued retirement pay for the month in question.”).
The majority does not make any analysis of Alabama law or of a private employer’s liability except to indicate in a footnote (n. 5, ante) that liability is “well-settled,” referring the reader to 38 C.J.S. Garnishment §§ 244, 231 (1955) and cases cited therein.[4] However, the authority cited, upon examination, fails to provide any support for the summary disposition of this issue by the majority. Indeed, the only attempts by an employee to subject an employer to double liability, by reason of failing to make a collateral attack on the underlying judgment, have been against the Government and in all cases, except this one, such attempts have received short shrift.
The Fourth Circuit in the landmark case directly on point, Calhoun v. United States, supra, which was fully briefed up to the Supreme Court, reached a conclusion directly contrary to the majority. The pertinent facts on the issue of liability in Calhoun are indistinguishable from the facts at hand.[5] An officer sued for his statutory pay under the Tucker Act.[6] Commander Calhoun had received service by mail in Virginia relating to California divorce proceedings after his wife abandoned him and moved to California. Commander Calhoun did not answer or appear in the proceedings. His wife was granted a divorce and an award of alimony and child support. Mrs. Calhoun applied to the California court for a writ of garnishment on that judgment. Commander Calhoun received notice of garnishment from the court and from the Navy Family Allowance Activity. His attorney informed the Navy that the California court had no in personam jurisdiction over Commander Calhoun when it entered the support decree, since he was not resident, domiciled, served with process or otherwise engaged in activities in California. Like Morton, he asserted *695 that the Government was obligated to attack the California decree. All of the arguments advanced by Colonel Morton were advanced by Commander Calhoun. In a per curiam opinion of Chief Judge Haynsworth and Judges Butzner and Russell, the court affirmed the grant of summary judgment to the Government, applying the same law to the Government as that applicable to a private employer:
It is clear that the employer, on receipt of the garnishment notice, must give notice to its employee that it has been served so that the employee has the opportunity to defend himself. See Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1904). The employer has a greater obligation only where the underlying judgment is void on its face.
In this case, the divorce judgment is facially valid. Service by mail was had in accordance with the California Code of Civil Procedure § 415.20. The asserted invalidity is the California court’s lack of in personam jurisdiction over Calhoun. The question as to in personam jurisdiction will probably be whether Calhoun was a domiciliary resident or citizen of California. Calhoun is assuredly in a better position to effectively litigate that issue than is the United States. The United States was under no duty to contest the judgment, exposing itself to potential double liabilities. It was Calhoun’s obligation to attack the judgment if he wished to avoid the deduction from his pay.
557 F.2d at 402 (emphasis added).
The majority attempts to distinguish Calhoun from the case at hand by reliance on the finding of the trial judge here that Alabama had no “long-arm” statute comparable to that of California, (n. 13, ante.) Not only is absence of a statute immaterial in view of the judicially established law in Alabama,[7] but also the existence of a long-arm statute does not change the issue of whether Calhoun and Morton could be subject, as a matter of due process, to the jurisdiction of the respective courts. Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).
The Calhoun court did not exonerate the United States because the underlying judgment was not void, but because, in its view, it was not incumbent on an employer to look behind the facial validity of the garnishment process. The Fourth Circuit refused to undertake the ill-advised plunge into the facts taken by the majority here. It relied on the statement of the California court that it had jurisdiction. The Alabama divorce decree which was served on the United States with the writ in issue here begins with the equivalent statement: “It appearing in this cause that the Defendant was duly served and failed to appear .... ”
It must be emphasized that the Calhoun court was addressing only the issue of liability. While garnishment of federal wages *696 came into being in 1975, the immunity provision and the definitions in 42 U.S.C. § 662 relating thereto, discussed infra, were not enacted until 1977 and were not at issue in Calhoun. Thus, without the immunity provision, the Calhoun court found no liability. The majority’s treatment of Calhoun in its discussion of immunity illustrates the confusion which I find throughout the opinion between immunity and liability.

Relief from Void Judgments

The majority puts forth no basis for liability other than that a garnisheed employer would remain liable to an employee for paying a void judgment against his employee. Void to the majority means void for all purposes and with respect to all persons. This conclusion is not only in error as a matter of garnishment law but also contravenes accepted principles of the effect which must be given to void judgments, particularly where the rights of third parties would be adversely affected. To avoid belaboring this point, I will only call attention to the American Law Institute’s recently published Restatement (Second) of Judgments (1982), which contains lucid explanations throughout the two volumes why the majority’s simplistic view is in error. Of particular interest is § 16 Comment c (pp. 146-47 of Vol. 1), which analyzes the problem of a judgment based on a void judgment as follows:
As stated in Comment a above, the problem when met head-on is that of a judgment based and dependent upon an earlier judgment which is subsequently nullified. It has been contended that the later judgment should then be automatically nullified. The current doctrine, however, is that the later judgment remains valid, but a party, upon a showing that the earlier judgment has been nullified and that relief from the later judgment is warranted, may by appropriate proceedings secure such relief.
If, when the earlier judgment is set aside or reversed, the later judgment is still subject to a post-judgment motion for a new trial or the like, or is still open to appeal, or such a motion has actually been made and is pending or an appeal has been taken and remains undecided, a party may inform the trial or appellate court of the nullification of the earlier judgment and the consequence elimination of the basis for the later judgment. The court should then normally set aside the later judgment. When the later judgment is no longer open to a motion for a new trial or the like at the trial court level, nor subject to appeal, the fact of the nullification of the earlier judgment may be made the ground for appropriate proceedings for relief from the later judgment with any suitable provision for restitution of benefits that may have been obtained under that judgment.
It must be borne in mind that relief from any judgment is based on equitable principles and that restitution can be obtained only from one who benefited by the judgment. This is the thrust of the decision of the Supreme Court in Laborde v. Ubarri, supra, (attachor required to return property). Similarly, in a recent decision, Harris v. National Bank & Trust Co., 406 So.2d 968 (Ala.Civ.App.1981), where a writ of garnishment was void, an employee was held to be entitled to return of her garnisheed wages from the person (garnishor or employer) who was holding them. Thus, if Colonel Morton is entitled to relief from the Alabama judgments, the proper defendant is his wife, not the United States. Tinnin v. Tinnin, 391 So.2d 1047 (Ala.Civ.App.1980).

Conclusion on Liability

The trial court erred as a matter of law in finding the United States liable under the precedent of Laborde v. Ubarri, supra. The majority similarly assumes liability, if there is no immunity.[8] I would hold for the Government on the issue of liability.
*697 III

Interpretation of 42 U.S.C. § 659(f)

The majority wholly ignores the interpretation of the subject statute given by the Comptroller General of the United States and more than eight years of established administrative practice. Indeed, the majority appears unaware that the current garnishment regulations of the Office of Personnel Management, 5 C.F.R. § 581.101 et seq. (1981), (which are basic to the regulations of all agencies), are void if the majority opinion stands. Moreover, these regulations were entirely in accordance with the decisions of all other federal courts which had interpreted the statute and the obligations of the Government as a garnishee before this court’s decision. In view of the plenary appellate jurisdiction of this court over these cases, see 28 U.S.C. §§ 1295(a)(2) and (3), regulations of all federal agencies must be made to conform to the majority decision, which in my view is equally in error on the issue of immunity as on liability-
sovereign immunity is deemed waived by the various statutes under which persons employed by the Government are entitled to pay. 42 U.S.C. § 659, enacted in 1975, waives sovereign immunity to allow garnishment of federal wages for the limited purpose of family support. After a flurry of litigation against the Government regarding garnishment, in 1977 the garnishment statute was amended (Tax Reduction and Simplification Act of 1977, Pub.L. No. 95-30, § 501, 91 Stat. 126, 157 (1977)) specifically to reassert sovereign immunity with respect to claims of employees whose wages had been garnished. Any pay claim is, thus, limited by the final paragraph of 42 U.S.C. § 659:[9]
(f) Neither the United States, any disbursing officer, nor governmental entity shall be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process regular on its face, if such payment is made in accordance with this section and the regulations issued to carry out this section.
This immunity provision, in fact, parallels generally the scope of a garnishee’s liability as defined by the Alabama courts and in Calhoun. The immunity provision has the effect of a limitation or prohibition against imposition of greater duties on the Government by any state and, thus, is an aid to administration in that garnishment from all states can be treated uniformly. Since 42 U.S.C. § 659(f) by its terms is satisfied here, Morton’s claim should be dismissed for lack of jurisdiction. The majority, however, finds no immunity by interpreting the reservation of immunity narrowly and by the addition of qualifying phrases, contrary to repeated instruction of the Supreme Court that consent must be “unequivocally expressed.” United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); United States v. Tes-tan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).
The majority first construes the immunity statute to require that the court which issued the underlying judgment must have jurisdiction over the subject matter and in personam jurisdiction over the employee. Only then, in the majority view, is the court a “court of competent jurisdiction” within the meaning of 42 U.S.C. § 662 (Supp. IV 1980), the section in which “legal process” is defined. By finding that the Alabama court had no jurisdiction over Morton, the Alabama court could not issue “legal process” [“[T]he writs ... did not constitute *698 legal process for purposes of 42 U.S.C. § 659,” ante at 689]. Thus, it would seem unnecessary to read further into 42 U.S.C. § 659 to say there is no sovereign immunity, and, in fact, the majority’s analysis entitled “Immunity” ends at this point.[10]
The majority at the end of its opinion then appears to have second thoughts about the absolutism of its holding on immunity and steps back to modify its position, concluding:
At the same time, we hold that the immunity provisions of the garnishment statute permit the Government, where the process document is regular on its face, to make payment without liability on a presumption that the underlying judgment is valid....
Ante, at 689.
Since all process served here is regular on its face and the Government would be exculpated, the majority has to turn again, and adds:
[B]ut that such presumption is rebuttable by a showing that the Government had notice of a substantial claim of jurisdictional irregularity.
Ante, at 689. In effect, the majority accepts the immunity statute as written but adds its own proviso.
What the majority is, in fact, doing is construing the immunity statute to impose liability on a theory of negligence or breach of fiduciary duty. Indeed, its entire two factor analysis of “court of competent jurisdiction” is simply irrelevant to its own conclusion. The majority adopts no absolute requirement for either subject matter or personal jurisdiction. In my view, to be a “court of competent jurisdiction” the court must have subject matter jurisdiction.
Since the majority is basing the allowance of Morton’s claim on the conduct of the Air Force and Morton, it is appropriate to look at what steps the Government took and what “notice” Morton gave the Government.
To begin with, when Colonel Morton sought advice in 1975 concerning the judgment awarding alimony and child support to Mrs. Morton, the Air Force advised him that a court entering a monetary decree had to have personal jurisdiction over him. That advice was correct. Personal jurisdiction does not, of course, require personal service, in the sense of service on Colonel Morton in Alabama. Service by mail, as authorized by the Alabama court here, is sufficient for the exercise of personal jurisdiction if Colonel Morton had sufficient contacts with Alabama.
With respect to the subsequent writs of garnishment, Morton does not challenge the facts set forth in the following affidavit:
State of Colorado )
City and County of Denver )
AFFIDAVIT
James R. Russell, Affiant, being first duly sworn, upon oath deposes and states as follows:
1. Affiant is a civilian Attorney-Advisor assigned to the Office of the Staff Judge Advocate, Air Force Accounting and Finance Center, Denver CO 80279. Affi-ant’s duties principally involve legal review of State garnishment and similar processes served on the United States Air Force pursuant to 42 U.S.C. 659.
2. On 27 December 1976, the United States Air Force was served by certified mail with a Writ of Garnishment seeking to garnish the pay of Col Allan W. Morton. When the Writ of Garnishment was submitted to AFAFC/JA for legal review, it was randomly assigned to Affi-ant. In legal review, Affiant observed:
a. The Writ of Garnishment served was the “regular” form used in the State of Alabama. It was issued by the Register of the Tenth Judicial Circuit Court. (Attachment 1.)
*699 b. The Writ of Garnishment recited a decree entered in the cause dated 14 August 1975.
c. The Writ recited on its face that it sought “alimony and child support” in the amount of $4,100.00.
d. The Writ was accompanied by an Affidavit executed by Patricia K. Morton which recited the Judgment dated 14 August 1975 and that $4,100.00 was due and owing for alimony and child support. (Attachment 2.)
e. The Writ was accompanied by a copy of a “Final Judgment of Divorce”. In paragraph 5, such Judgment demonstrated that $500.00 per month was made against Allan W. Morton “as alimony for plaintiff and partial support and maintenance of the said minor children”. The .Judgment recited in its first line, “It appearing of record in this cause that the defendant was duly served and failed to appear ... ”. (Attachment 3.)
3. Based upon the observations in paragraph 2 hereof, Affiant determined that the Writ of Garnishment was issued under the authority of the Circuit Court and such had proper subject matter jurisdiction; that the collection was for child support and alimony and was therefore within the “waiver of sovereign immunity” imparted by 42 U.S.C. 659; that such Writ was issued upon Affidavit and was based upon a Final Judgment of Divorce which included an alimony and child support award; and that the Final Judgment of Divorce recited, “defendant was duly served”, and did not by its face raise personal jurisdiction questions. The Writ of Garnishment was determined to be legally sufficient to the extent of $4,100.00. At such time, the position of the United States Air Force was that “costs” were not within the scope of the waiver of sovereign immunity.
4. On or about 30 December 1976, Mr. Johnny Nieto, AFAFC/JA, then the senior attorney assigned to garnishment duties and Affiant’s supervisor, received a telephone call from Col Morton essentially alleging that the Alabama garnishment was invalid as no personal service of process was made. Mr. Nieto referred the information to Affiant and, on or about 30 December 1976, Affiant “stayed” compliance with the Writ pending receipt of documentation which Col Morton had indicated he would send.
5. On or about 10 January 1977, Affiant received a call from Col Morton, the nature of which was to advise that he was going to sue Affiant personally. In this conversation, Col Morton advised Affiant he had received service of process in the Alabama divorce proceeding by registered mail.
6. By letter dated 30 December 1976, Col Morton presented arguments that he had paid the obligation; that he was never served or notified of the proceeding; and that he was neither domiciled or a resident of Alabama. (Attachment 4.) In support of his arguments, Col Morton attached copies of five letters. (Attachment 5.) The letters were essentially the opinion of his legal counsel as to the validity of the Alabama divorce. The letters contained nothing that had any bearing on the recitation in the Judgment that “defendant was duly served”. Further, the letters demonstrated that Col Morton was a domiciliary of the State of Alabama who was advised by counsel on 18 August 1976 to change his legal place of residence. [Emphasis added.]
7. On 11 January 1977, an Answer was filed in the Alabama Court confessing indebtedness of $4,100.00 and such amount was subsequently paid to the Clerk of the Circuit Court. (Attachment 6.) Col Morton was advised by letter dated 14 January 1977 that the Alabama process was regular and valid on its face and would be honored. (Attachment 7.)
8. By telephone conversation 31 January 1977, Kaletah Carroll, plaintiff’s counsel herein, advised Affiant of her opinion of Alabama law and stated that no personal service of process had been made. By letter dated-29 March 1977, Kaletah Carroll provided documentation affirmatively demonstrating that Col Morton was served in the Alabama divorce proceeding *700 by registered “return receipt requested” mail. (Attachment 8.)
9. On 2 May 1977, the United States Air Force was served with a second writ of Garnishment seeking $1,750.00. (Attachment 9.) A Motion for Enlargement of Time of [sic] Answer was filed due to the enactment of Pub.L. 95-30 (23 May 1977). (Attachment 10.) Since Affiant was under threat of personal suit, the question of validity of service of process by registered mail was posed to the U.S. Attorney in Birmingham AL by letter dated 1 June 1977. (Attachment 11.) The U.S. Attorney advised that such service was sufficient pursuant to Rule 4.2, Alabama Rules of Civil Procedure. (Attachment 12.) An Answer to such Writ is due 6 July 1977 and such process has been determined legally sufficient and such answer was filed 30 June 1977 (Attachment 13); however, amounts due thereunder have not been paid as of present to the Clerk of the Court.
10. Attachments referred to herein are by this reference incorporated herein.
FURTHER, Affiant saith not.
/s/ James R. Russell
JAMES R. RUSSELL, Affiant.
Subscribed and sworn to before me by James R. Russell this 30th day of June, 1977.
/s/ Patricia A. Stichter
Notary Public
My Commission expires 21 June, 1980.
The affidavit is confirmed by Mr. Russell’s letter of January 14, 1977, to Colonel Morton which states:
To begin, Public Law 93-647, codified at 42 U.S.C. § 659 enters the consent of the United States to garnishment and similar processes of the states. No federal law of garnishment was created, and consequently, all questions of law are resolved by reference to the law of the issuing state.
* * * * * *
We are precluded, as are US Attorneys, from raising any matter in the nature of a defense which belongs to the member. Further, we have no adjudicatory [sic] authority in factual matters. Even if it is proven to us that you have made the payments alleged as delinquent in the process, we still cannot disobey the court order. Such would be a defense that, by necessity, would have to be raised by you in the Alabama court.
The divorce decree herein recites that “Defendant was duly served and failed to appear within the time required”. Such may be untrue; however, it validates the face of the instrument. Any defect in jurisdiction or notice must be raised in the court.
The test of whether a court may exercise power over you is not limited to domicile or residence. There are many circumstances which would meet the “minimum contacts” required by the Supreme Court pronouncements in Hanson v. Denckla, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283] and International Shoe v. Washington, 326, [sic] U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95].
The Government’s advice that it could not undertake to challenge the alimony/child support decree on his behalf is in accordance with the regulations of the Air Force at that time and is in accordance with current regulations of the Office of Personnel Management, detailed infra, which, under the majority view are void. In my view the regulations not only correctly implement the statute, but it would be contrary to basic fairness if the force of the Government is brought to bear on the side of one party to an essentially private dispute. Indeed, it would entirely defeat the objective of the garnishment statute which is to remove persons from public assistance, if the Government must attempt to defeat the claims of dependent children and spouses, who are the only persons who can garnish federal wages.
Turning to Colonel Morton’s “substantial claim,” I can find no more in the record than a bald assertion that the support judgment was no good. The fact that he did not actually live in Alabama, and that Mrs. Morton so stated in the divorce papers, does *701 not resolve the issue of jurisdiction of the Alabama courts. On the facts here, in my view, the support judgment was valid ab initio, but even if void, it was the basis for a valid judgment against the Government until set aside. In no event can the voidness of the underlying judgment be used as a sword against the Government.
What the majority wholly fails to appreciate is that 42 U.S.C. § 659(f) is designed not only to protect the Government itself from a claim like Colonel Morton’s, but also to shield individuals who serve as disbursing officers. The record indicates that Colonel Morton has threatened individual Government officers with suit for their actions. The majority, by its interpretation of the statute injecting Fifth Amendment rights of due process, places a seal of approval on such Bivens claims.[11] The majority myopically looks only at protecting Colonel Morton, who is the only interested party whose rights remain fully protected if 42 U.S.C. § 659(f) is upheld by its terms. By its restrictive reading of 42 U.S.C. § 659(f), the majority destroys its intended purposes.
Also, contrary to the majority view, the rule of this case places an enormous administrative burden on all agencies of the Government. All regulations must be revised to conform to this decision. The majority’s test of “notice of substantial irregularity” means no more, on the basis of the facts here, than that an employee must tell his pay officer or supervisor that he was not domiciled in the state asserting jurisdiction over him. Colonel Morton did no more than that, and his “supporting” evidence, a letter from his attorney advising him to change his domicile from Alabama, negated his claim. No other “facts” relied on by the majority were even known until the trial. The undercurrent in the opinion is that the Government owes a special duty to military personnel.[12] However, all employees of the Government are subject to garnishment of wages and a privileged class cannot be recognized within the confines of 42 U.S.C. § 659(f).
The regulations of the Office of Personnel Management [5 C.F.R. § 581.101 et seq. (1981) ], too lengthy to quote in their entirety here, are based on the interpretation of the statute and understanding of the Government’s responsibilities previously given by all other administrative and judicial authorities. No provision is made for defending a suit for an employee or looking behind facial validity on penalty of double liability. For example, § 581.302 entitled “Notification of Obligor” provides:
(a) As soon as possible, but not later than fifteen (15) calendar days after the date of valid service of legal process, the agent designated to accept legal process shall send to the obligor, at his or her duty station or last known home address, written notice:
(2) Of the maximum garnishment limitations set forth in § 581.402, with a request that the obligor submit supporting affidavits or other documentation necessary for determining the applicable percentage limitation;
(4) Of the percentage that would be deducted if he/she fails to submit the documentation necessary to enable the governmental entity to respond to the legal process within the time limits set forth in § 581.303.
(b) The governmental entity may provide the obligor with the following additional information:
(1) Copies of any other documents submitted in support of the legal process:
(2) That the United States does not represent the interests of the obligor in the pending legal proceedings:
*702 (3) That the obligor may wish to consult legal counsel regarding defenses to the legal process that he or she may wish to assert; and
(4) That obligors in the uniformed services may avail themselves of the protections provided in sections 520, 521, and 523 of the Soldiers’ and Sailors’ Civil Relief Act of 1940 (50 U.S.Code App. 501 et seq.).
§ 581.305(a) provides:
(а) The governmental entity shall comply with legal process, except where the process cannot be complied with because:
(1) It does not, on its face, conform to the laws of the jurisdiction from which it was issued;
*4* * * * * *
(б) Where notice is received that the obligor has appealed the underlying alimony and/or child support order, payment of moneys subject to the legal process shall be suspended until the governmental entity is ordered by a court, or other authority, to resume payments. However, no suspension action shall be taken where the applicable law of the jurisdiction wherein the appeal is filed requires compliance with the legal process while an appeal is pending.
On facts virtually identical to those here, but with the further development that the state garnishment order was subsequently set aside, the Comptroller General of the United States rendered an opinion giving the following interpretation to the provisions of 42 U.S.C. § 659(f):
As is indicated above, when the Air Force received the garnishment order, they reviewed it and found it valid on its face and in conformity with the Florida law. Sergeant Mathews has not shown that that finding was incorrect. Instead, he argued that the order was invalid because it was obtained by fraud, and that he had not been properly served in the original court action against him. As the Air Force advised him, these were matters for him to litigate in the courts and not for the Air Force to decide. That is, they were not challenges to the facial validity of the garnishment order. While the order was set aside in 1980, it was valid at the time payment was being made under it, and the Government had a duty to comply with it until the court modified it. There is no authority for reimbursement of the amounts withheld from Sergeant Mathews’ pay, nor is there authority to reimburse him for the legal and other expenses he claims he incurred in having the order overturned.
Accordingly, the disallowance of the claim is sustained.
In the Matter of Technical Sergeant Harry E. Mathews, U.S.A.F., File No. B-203668 (Comp.Gen. Feb. 2, 1982) (emphasis added).
By failing to give any consideration to the administrative interpretation, the majority invites reversal by the Supreme Court. As stated by the Supreme Court recently in reversing the Court of Claims in another pay case, United States v. Clark, 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982):
Although not determinative, the construction of a statute by those charged with its administration is entitled to great deference, particularly when that interpretation has been followed consistently over a long period of time.
To the same effect is the statement in United States v. Hopkins, 427 U.S. 123, 127, 96 S.Ct. 2508, 2511, 49 L.Ed.2d 361 (1976) (per curiam):
[W]e think that the Court of Claims gave insufficient attention to applicable administrative regulations when it undertook to decide the question.
It must also be added that the administrative interpretation ignored here has had the blessing of the other circuits.
In Jizmerjian v. Dept. of Air Force, 457 F.Supp. 820 (D.S.C.1978), aff’d, 607 F.2d 1001 (4th Cir.1979), cert. denied, 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980), in an action for retirement pay paid by the Government pursuant to garnishment in Arizona, the court questioned the basis for the exercise of jurisdiction over the judgment-debtor in the principal action but dis *703 missed the suit against the Government on the basis of sovereign immunity as set forth in 42 U.S.C. § 659(f). The Arizona decree, like the Alabama decree here, stated no precise basis for jurisdiction and the ensuing contempt decree stated only that the Arizona court had “jurisdiction over the subject matter and the persons.” Id. at 823. The Jizmerjian court, nevertheless held:
Notwithstanding the able and articulate citation of authority in plaintiff’s brief in opposition to defendant’s motion [for summary judgment], this court is persuaded that 42 U.S.C. § 659(f) insulates the United States from this suit.
Id. at 824.
In Overman v. United States, 563 F.2d 1287, 1291 (8th Cir.1977), the Eighth Circuit, construing 42 U.S.C. § 659(f), similarly held that the judgment-debtor could not enjoin the Government from honoring the garnishment of his wages, stating: “Clearly, the defense of sovereign immunity applies here.”
The majority decision will create chaos in how the Government must operate in the thousands of garnishments it faces daily. It must either pay twice, or where permitted by a state court, litigate for any employee who raises a “substantial claim of jurisdictional irregularity” regardless of the regularity of the process “on its face.”
I would give 42 U.S.C. § 659(f) the same interpretation as the Comptroller General and the above courts. Given the various forms which a garnishment process can take and that garnishment may not even come from the court that entered the basic judgment, any other interpretation creates impossible administrative burdens. No more is required than that whatever process is served on the Government, the papers must be facially regular and be issued by a court with garnishment jurisdiction. There is no question here but that all process served on the Government was regular and came from the proper court under Alabama law. No violation of any regulation occurred. The statute by its terms provides immunity to the sovereign and its employees.
IV

Comity and Federalism

Suits against the Government resulting from garnishment of federal pay have taken many forms, but uniformly the result has been dismissal from the federal courts. The common theme found in each of these cases is that the federal court must defer to state remedies and procedures and not intrude into matters primarily of state interest.[13]
The Eighth Circuit in Overman v. United States, 563 F.2d at 1292-93, succinctly defined the appropriate relationship between federal and state courts:
There is, and ought to be, a continuing federal policy to avoid handling domestic relations cases in federal court in the absence of important concerns of a constitutional dimension. See, e.g., Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 383, 50 S.Ct. 154 [154] 74 L.Ed. 489 (1930); In re Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850 [582-83] 34 L.Ed. 500 (1890); Hernstadt v. Hernstadt, 373 F.2d 316 (2d Cir.1967). Such cases touch state law and policy in a deep and sensitive manner, and “[a]s a matter of policy and comity, these local problems should be decided in state courts.” Buechold v. Ortis, supra, 401 F.2d at 373. This court will not lightly presume that Congress, when enacting § 659, meant for the federal courts to take over the entire domain of domestic relations law applicable to federal employees.[5] Moreover, we will not readily infer that Congress intended to permit federal agencies to be dragged in as defendants by any federal employee or spouse of an employee who, unhappy with a prior state adjudication, seeks to contest it by suing the Government over *704 wage garnishment rather than challenging the divorce decree in an appropriate state forum.
In Cunningham v. Department of Navy, 455 F.Supp. 1370 (D.Conn.1978), the Connecticut district court dismissed an action to enjoin the garnishment of the plaintiff’s Navy retirement pay pursuant to garnishment proceedings in a New York court on a Virginia divorce decree. The plaintiff resided in Connecticut and had never resided in New York. He attacked the exercise of in personam jurisdiction over him by the New York court in rendering the judgment against him on which the garnishment order to the Navy was based. The court expressed doubt about the constitutionality of the New York long-arm statute as applied to Mr. Cunningham, but concluded that it was without power to consider plaintiff’s collateral attack on the New York judgment.[14] Noting the deep concerns with respect to comity expressed in Overman, and by the Supreme Court in Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Cunningham court held:
Similar considerations should apply in the case at bar. Although plaintiff insists that his only claim is against an agency of the federal government, his extensive briefing on the New York matrimonial long-arm statute, his vehement argument regarding his non-liability for an alimony arrearage, and his documenting of his ex-wife’s allegedly unconscionable behavior before the New York court belie the narrowness of his claim. He implicates domestic relations policies which are more properly within the interest of the two states involved — either New York or Virginia.
455 F.Supp. at 1372.
Other courts agree. In West v. West, 402 F.Supp. at 1192, the court stated:
At this point, the only question which would arise in the case would concern the basis of the garnishment, a domestic relations type of issue not appropriate for resolution by this court. See Barber v. Barber, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1859).
In Jizmerjian v. Dept. Of Air Force, 457 F.Supp. at 824, the court advised:
[H]is only possible successful method of attack on the Arizona alimony decree must take place in the Arizona state courts.
In Popple v. United States, 416 F.Supp. at 1228, the district court similarly deferred to the state:
Plaintiff’s real argument is that § 659 does not give a state court jurisdiction over an individual not resident in that state. This argument would properly be made in the state court that purported to garnish wages of an individual not resident in that state.
In Garrett v. Hoffman, supra, Judge Luongo construed 28 U.S.C. § 2283 (1970)[15] as precluding federal court action under similar circumstances:
*705 A litigant may not defeat the policy underlying § 2283 — the avoidance of “needless friction between state and federal courts” — by framing the action as one for a declaratory judgment rather than as one for an injunction. E.g., Dresser Indus., Inc. v. Insurance Co. of North America, 358 F.Supp. 327, 330 (N.D.Tex. 1973); Brooks v. Briley, 274 F.Supp. 538, 558 (M.D.Tenn.1967) (alternative holding) (three-judge court), aff’d per curiam, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968); Rockefeller v. First Nat’l Bank, 154 F.Supp. 122, 125 (S.D.Ga.1957); C. Wright, Federal Courts § 47, at 20A-05 (3d ed. 1976).
The federal defendants here argue that this action “is in essence an attempt by plaintiff to invalidate and enjoin enforcement of the Florida judgment by resort to federal court.” .... Plaintiff ... asserts, this lawsuit challenges only “the Federal defendants’ actions in failing to pay the plaintiff retired pay to which he is entitled.” .... I cannot accept plaintiff’s contention. An examination of the relief requested in his complaint makes it abundantly clear that plaintiff is ultimately attacking the Florida court’s writs of garnishment.
441 F.Supp. 1156-57 (footnotes omitted). In Wilhelm v. U.S. Dept. of Air Force Accounting, 418 F.Supp. 162 (S.D.Tex.1976), the court similarly deferred to the state, in declining to accept removal from the Texas courts at the behest of the Government, stating:
The Court has concluded that no policy or purpose will be served by construing § 1442(a)(1) in the present context to permit the removal of these domestic relations disputes to federal court. A broader construction of this provision would effect a profound alteration in the relationship between federal and state courts.
Id. at 166.
No sound policy warrants the friction the majority creates not only with Alabama, but with all other state jurisdictions. In my view, the majority is in clear conflict with the decision of the Supreme Court in Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), involving a constitutional challenge to the Illinois attachment statute. In dismissing the federal action, the court raised again the vital consideration “that in a Union where both the States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions, particularly with the operation of state courts.” Id. at 441, 97 S.Ct. at 1916 (emphasis added). That concern is not found in the majority decision.[16]
The majority opinion would lead one to believe that the support judgment was not a considered judgment of the court. The majority refers to it as “a judgment by default.” A default in the case was entered by the clerk. However, before the judgment in the case was given, Mrs. Morton was required to appear before the court to establish her entitlement to a money judgment. The decree in this case specifically states that “testimony” was given by Mrs. Morton. To obtain service by mail on her husband Mrs. Morton had correctly stated that he was a non-resident. The majority assumes that the Alabama court was either incompetent or ignored the fact of his non-residence in deciding that Mrs. Morton was entitled to a monetary award. Lightell v. Lightell, 394 So.2d 41 (Ala.Civ.App.1981), cited by the majority, belies the inference that Alabama courts are little concerned with jurisdictional questions.
V

Jurisdiction of Alabama Court

The majority upholds the trial court’s conclusion that Colonel Morton did not have sufficient contact with Alabama to bring him within the jurisdiction of its courts. There can be no dispute that, as the plaintiff, Colonel Morton would have the burden *706 of proof of facts supporting that legal conclusion. The facts stated in the majority opinion in his favor have been given a gloss they do not deserve. Indeed, the record lacks vitality due to the absence of the most knowledgeable adversary, Mrs. Morton.[17] The record consists solely of answers to interrogatories and affidavits. There has in no sense been the kind of trial where facts are developed through testimony of witnesses subject to cross-examination. Moreover, the Government has no personal knowledge with which to counter Colonel Morton’s self-serving statements.
However, even on this bland record, one can find no basic unfairness under the standards of Kulko v. Superior Court of California, supra, in the exercise of jurisdiction by the Alabama court since Colonel Morton had purposely availed himself “of the privilege of conducting activities within the forum State, invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
In 1974, the year in which Colonel Morton was served in the divorce proceedings, he was paying taxes to the state of Alabama and claiming Alabama as his permanent place of residence, not only on Air Force forms, but on his 1973 and 1974 federal tax returns (filed 1974 and 1975), where a deduction could have been taken for Alabama taxes. That in itself should be enough. By invoking the state’s taxing authority Colonel Morton clearly sought “the benefits and protections of its law.” Whether payment in Alabama also reduced his liability for taxes in Virginia, where he had to file as an actual resident, we do not know. None of his returns are in the record despite the request of the trial judge for these documents.
Moreover, he had used the state of Alabama in other ways over the years in addition to those mentioned by the majority. He registered one or more cars in Alabama after he had left the state. It is also apparent that Colonel Morton sought to invoke the law and courts of Alabama. On September 15, 1973, in anticipation of separation, Colonel Morton and his wife entered into a separation agreement. At that time they were residing in Virginia. It is apparent from this agreement that the parties contemplated that, if divorce proceedings were instituted, Alabama courts would be used.[18] He moved his wife and children to Alabama at Government expense by asserting it was his permanent residence. At that time, he avers, he hoped for a reconciliation.
After the Alabama court awarded the judgment for alimony and child support in the same amounts as he had been paying,[19] Colonel Morton continued to make payments to Mrs. Morton until December 1976, specifying on his checks: “for divorce,” “for child support,” or simply the number of the payment since the separation agreement. His action indicates that he was generally satisfied with the decree and waived any objection to lack of personal jurisdiction which in itself is ground for finding the decree to be valid. Restatement, (Second) of Judgments §§ 5 and 61 (1982). He married Ronnette Dreves in October 1975 in reliance on the Alabama divorce.
During the pendency of the divorce proceedings in Alabama (August 1974-August *707 1975), the parties were actively litigating the settlement agreement in Virginia from July 1974 until June 10, 1976. A letter from his attorney, whom the majority nevertheless treats as uninformed, advised him in August 1976 to change his domicile from Alabama.
Whether Colonel Morton intended to make, or made, Alaska his permanent domicile from the moment he transferred there in May 1974 is not proved by credible evidence[20] nor, in any event, of controlling significance. Accepting his statement of intent as true cannot overcome the fact of his relationship with Alabama which he asserted as a taxpayer for the entirety of 1974. He was, accordingly, subject to the jurisdiction of the Alabama court in 1974 and to service by mail, since he could not be physically served there, as permitted by the Alabama court.
VI
In view of the foregoing, I would reverse the judgment of the Claims Court.
APPENDIX
CODE OF ALABAMA — 1975
ARTICLE 9.
GARNISHMENTS.
§ 6-6-370. “Garnishment” defined.
A “garnishment,” as employed in this article, is process to reach and subject money or effects of a defendant ..., in a judgment ... in the possession or under the control of a third person, ...; and such third person is called the garnishee.
§ 6-6-390. When process of garnishment obtainable.
The plaintiff ... in any judgment on which execution can issue may obtain process of garnishment as defined in section 6-6-370 ....
§ 6-6-391. Affidavit of amount due plaintiff.
To obtain such writ of garnishment, the plaintiff, his agent or attorney must make, before an officer authorized to administer oaths, and file, with the clerk of the court in which ... the judgment was entered, an affidavit stating the amount due from the defendant to the plaintiff, ... that process of garnishment is believed to be necessary to obtain satisfaction thereof and that the person to be summoned as garnishee is believed to be chargeable as garnishee in the case....
§ 6-6-393. Issuance and service of process.
Upon the filing of the affidavit ..., the officer filing the same must issue process of garnishment and a copy thereof for each garnishee, to be served by the proper officer, requiring the garnishee to appear within 30 days and file an answer, upon oath, whether, at the time of the service of the garnishment, at the time of making his answer or at any time intervening between the time of serving the garnishment and making the answer he was indebted to the defendant and whether he will not be indebted in future to him by a contract then existing, whether by a contract then existing he is liable to him for the delivery of personal property or for the payment of money which may be discharged by the delivery of personal property or which is payable in personal property and whether he has not in his possession or under his control money of effects belonging to the defendant.
§ 6-6-430. Filing of bond; discharge of money or property from garnishment; proceedings as if bond not executed; judgment; discharge of garnishee.
(a) When garnishment has been issued ... upon a judgment, the defendant may make and file with the judge or clerk issuing the garnishment bond in such sum as the judge or clerk may prescribe, not exceeding twice the amount of the plaintiffs demand, payable to the plaintiff, with sufficiency surety, to be approved by such judge *708 or clerk, conditioned to pay the amount for which the garnishee may be found indebted or liable to the defendant and the cost of the garnishment. Thereupon, the money or property in the hands of the garnishee is discharged from the garnishment and the garnishee relieved of all liability therefor to the plaintiff; but the garnishee must answer, and, except as is otherwise provided in this article, the case must proceed and be determined as if such bond had not been executed.
(c) The garnishee is not discharged from liability to the defendant until he has paid the debt or satisfied the demand the garnishment was intended to reach.
§ 6-6-450. Filing of answer; notice thereof; oral examination.
The garnishee must answer under oath according to the terms of the garnishment; and, upon filing, the clerk or register shall give the plaintiff and defendant notice... .
§ 6-6-452. Payment of defendant’s money into court if garnishee admits possession thereof.
If the garnishee admits the possession of money belonging to the defendant, he must pay the same or so much thereof as may be necessary to satisfy the plaintiff’s demand and costs into court to await the order of the court; and, if he fails to make such payment, he is liable as if he had admitted an indebtedness for the amount of such money.
§ 6-6-453. Payment of indebtedness or liability to clerk; effect thereof; ordering of deposit by court.
(a) When the garnishee admits indebtedness or liability to the defendant and the defendant has not executed bond for the dissolution of the garnishment, as provided in division 4 of this article, the garnishee may, by order of the court first had and obtained, pay the amount of such indebtedness or liability or so much thereof as the court may direct into the hands of the clerk, to be held subject to the judgment in the case. Such payment has the effect to discharge the garnishee from liability for the amount so paid and interest subsequently accruing thereon ....
§ 6-6-454. Judgment where answer admits indebtedness to defendant.
If the garnishee answers and admits indebtedness to the defendant, judgment thereon must be entered against him, ... for the amount so admitted, if less than the amount of the judgment against the defendant, or, if more or equal thereto, for the amount thereof ....
§ 6-6-457. Proceedings on failure to appear and answer.
If the garnishee fails to appear and answer, a conditional judgment must be entered against him for the amount of the plaintiff’s claim, as ascertained by his judgment, to be made absolute unless he appears within 30 days after notice of the conditional judgment issued by the clerk, to be served on him, as other process, by the sheriff. If he fails to appear within the time required by the notice served upon him or if two notices are returned “not found” by the sheriff of the county in which the garnishment was executed, the judgment must be made absolute.
§ 6-6-459. Contest of answer by defendant.
The defendant, upon the coming in of the answer, may, within 30 days after notice of the filing of the answer, allege that the garnishee is indebted to him in a larger sum than he has admitted, is otherwise liable to him on a demand, the subject of garnishment, or that he holds money or effects of the defendant not admitted in his answer, which, being reduced to writing setting forth particularly in what respect the answer is deficient and being sworn to, an issue must thereupon be made up, under the direction of the court, which must be tried by a jury if required by either party; but such controversy shall not prevent the *709 plaintiff from taking judgment upon the answer of the garnishee.
§ 6-6-461. Effect of judgment for plaintiff as between garnishee and defendant.
The judgment condemning the debt, demand, money or effects to the satisfaction of the plaintiff’s demand is conclusive as between the garnishee and the defendant to the extent of such judgment, unless the defendant prosecutes to effect an appeal from such judgment, which he may do in his own name; and, if such judgment is stayed by bond and the garnishee is notified of the fact, he is not permitted to discharge such judgment pending the appeal.
§ 6-6-463. Disposition of claims of other persons suggested by garnishee.
(e) The interposition of these collateral issues [i.e., third party claimants] does not affect the jurisdiction of the court obtained by ... service of garnishment.
§ 6-6-464. Appeals.
An appeal lies to the supreme court or the court of civil appeals, as the case may be, at the instance of the plaintiff, the defendant, the garnishee or the contestant or claimant.

. After many readings of the majority opinion, I can only conclude that the majority’s theory of liability sounds in tort rather than being based on a statutory pay claim, i.e., on a debt.

. This case was previously before the United States Court of Claims on cross motions for summary judgment, which were denied without prejudice. The court did not make any determination, legal or factual, on any issue, inasmuch as it found the record inadequate. The issue of liability of an ordinary garnishee was raised in the briefs on the motions for summary judgment, and the arguments previously advanced by Morton have been taken into account. The issue of immunity came into this case only after enactment of 42 U.S.C. § 659(f). Because the issue of liability has never been fully briefed by the Government and because I find this issue in itself dispositive, it has been developed here. Also the immunity provision cannot be interpreted properly, in my view, without full appreciation of the issue of liability.

. The Alabama code applicable when garnishment was had in 1977-78 is found in Ala.Code § 6-6-370 et seq. (1975) (Article 9). All references are to the 1975 Compilation of the Alabama Code unless indicated otherwise. Pertinent sections are set forth in the appendix. Contrary to n. 10, ante, wages payable outside the state are subject to garnishment if the employer does business in the state. Orrox Corp. v. Orr, 364 So.2d 1170 (Ala. 1978).

. In looking for precedent in garnishment proceedings, as previously indicated, one must distinguish between cases where the underlying judgment was obtained prior to the garnishee’s involvement and those where the presence of the garnishee, or the “res” he holds, provides the jurisdictional basis for the judgment against the person whose property is garnisheed. Greater duties may have been imposed in pre-judgment garnishment, but after recent decisions of the U.S. Supreme Court these cases have little, if any, continued validity, in any event. See Note, Garnishment in Alabama, 29 Ala.L.Rev. 649, 661-67 (1978), for a discussion of the effect of these decisions on Alabama law. Cole v. Randall Park Holding Co., 201 Md. 616, 95 A.2d 273 (1953), and Egnatik v. Riverview State Bank of Kansas City, 114 Kan. 105, 216 P. 1100 (1923), cited by appellant, and the cases at 38 C.J.S. Garnishment § 244 (1955), are cases of this nature and have no applicability to garnishment in aid of execution on a pre-existing judgment. Here the United States was in no way responsible for the judgment of alimony and child support against Colonel Morton, and, indeed, was not subject to garnishment suits at the time the suit was begun. See Garrett v. Hoffman, 441 F.Supp. 1151, 1158 (E.D.Pa.1977), which discusses this difference in connection with garnishment of federal wages. The majority also cites 38 C.J.S. Garnishment § 311 (1955) and dictum in Betts v. Coltes, 467 F.Supp. 544 (D.Hawaii 1979), concerning actions for wrongful garnishment, tort cases not within the jurisdiction of the trial forum here, and/or excessive garnishment, not relevant here.

. On the issue of in personam jurisdiction, the facts detailed in the trial court and appellate opinions show that Commander Calhoun had no connection with California, unlike Colonel Morton with Alabama.

. The jurisdiction of the district courts was identical at that time with the former United States Court of Claims except for amount in such cases. 28 U.S.C. § 1346(a)(2) (1976).

. Contrary to the majority view, a long-arm statute is not necessary to confer jurisdiction on the Alabama state court. Such jurisdiction may be exercised unless restricted by a long-arm statute or other jurisdictional limitation. The Alabama Supreme Court in New York Times v. Sullivan, 273 Ala. 656, 144 So.2d 25, 34 (1962), rev’d on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), had declared that Alabama jurisdiction extended to the full extent allowed by due process and permitted service by mail on non-residents. See also Ex parte Martin, 281 Ala. 135, 199 So.2d 836 (1967). Rule 4.2 was adopted by the Alabama Supreme Court to clarify the former Rule 4 of the Alabama Code of Civil Procedure (effective July 3, 1973, and published at 290 Ala. 373 (1973)). The new rules, while making explicit that Alabama asserts “long-arm” jurisdiction as far as due process will allow, does not represent any expansion of the jurisdiction of Alabama courts over what it was at the time Mrs. Morton filed her complaint against Colonel Morton. Code of Alabama, Tit. 13, § 17(a) (1971) (1973 Cum.Supp.). See generally, “Committee Comments on Proposed Amendments to the Alabama Code of Civil Procedure,” 37 Alabama Lawyer 84 (April 1976).
The majority states there was no “personal service” on Colonel Morton, using the term in the narrow sense of delivery of a summons to him personally within the state. He was properly served by mail pursuant to the court’s direction if he was subject to the court’s jurisdiction. There is no challenge to the adequacy of the notice he actually received of all proceedings.

. The majority has laced its opinion with constitutional overtones. In connection with a claim to statutory pay, this adds nothing to Morton’s claim. United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Morton’s due process rights were, in any event, fully protected by his right to defend the garnishment proceeding, as he had a right to do *697 under Alabama law, as a party. Harris v. National Bank & Trust Co., 406 So.2d 968 (Ala.Civ.App.1981). Despite at least three opportunities (three to five writs have been served), Morton wholly failed to avail himself of state procedures which would have protected him from wrongful garnishment. The majority’s solicitude for his due process rights appears misplaced. By choice, he purposefully ignored the safeguards available to him.

. While the section is entitled “Non-liability,” it is considered by the parties and the majority as a reservation of immunity, and for purposes here, I will also treat it as an immunity statute. The statute could also be treated as an affirmative defense to a pay claim.

. The majority similarly relies on the necessity for a “legal obligation” in 42 U.S.C. § 659(a) (1976 & Supp. IV 1980). Apparently the majority rejects the view of Congress that “all children have the right to receive support from their fathers.” S.Rep. No. 93-1356, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 8133, 8146.

. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

. The majority’s emphasis on what Colonel Morton said he was told by military legal advis-ors confirms that the majority has recognized a tort claim not a pay claim.

. In any collateral relief from a judgment, which is what Colonel Morton seeks here, comity must be considered. (See Restatement (Second) of Judgments § 79 (1982).) Comity has even greater significance between state and federal courts.

 The federal courts have uniformly rejected jurisdiction of ordinary garnishment proceedings whether the federal defendants have sought removal or the action has been commenced initially in federal court. Wilhelm v. United States Dept. of Air Force Accounting, 418 F.Supp. 162 (S.D.Tex.1976); Popple v. United States, 416 F.Supp. 1227 (W.D.N.Y. 1976); Golightly v. Golightly, 410 F.Supp. 861 (D.Neb.1976); Morrison v. Morrison, 408 F.Supp. 315 (N.D.Tex.1976); West v. West, 402 F.Supp. 1189 (N.D.Ga.1975); Bolling v. Howland, 398 F.Supp. 1313 (M.D.Tenn.1975).

. The majority incorrectly states that the plaintiff in Cunningham did not attack lack of personal jurisdiction. This is precisely what he did attack in arguing that the in personam jurisdiction exercised by the New York court was unconstitutional. Colonel Morton makes the identical attack here.

. § 2283. Stay of State court proceedings
A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng’rs, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970) (“It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding.”).

. Prior decisions of the U.S. Court of Claims have adhered to that principle. Gunston v. United States, 221 Ct.Cl. 57, 602 F.2d 316, 319 n. 4 (Ct.Cl.1979).

. If this were legally a pay claim, rather than a negligence or breach of fiduciary duty claim, Mrs. Morton and the dependent child would be indispensable parties. There is only one claim to pay and there are conflicting claimants. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The majority has determined that adverse claimants' have no rights without notice or an opportunity to be heard. Moreover, the Alabama court may continue to order payments under garnishment since the parties to that litigation are not bound by the judgment in this case.

. The settlement agreement incorporated the particular grounds for divorce provided under Alabama law and was to serve as the basis for division of property, alimony and child support, if the parties were divorced on such grounds.

. Morton had been paying $500 a month under the settlement agreement then in effect since September 1973. The decree imposed no greater burden than he had agreed to.

. He did not pay taxes in Alaska until 1976 (for 1975) and he moved from there in 1977.